# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

Criminal Action No. 14-0030-2 (BAH)

MICHAEL BIKUNDI SR.,

Judge Beryl A. Howell

Defendant.

## MEMORANDUM OPINION

On December 18, 2014, a federal grand jury indicted Carlson Igwacho, his step-father, Michael Bikundi, his mother, Florence Bikundi, and others, for their role in an alleged scheme to defraud the District of Columbia Medicaid Program.[*] *See* Indictment ("Superseding Indictment"), ECF No. 44. Now pending before the Court is the Government's motion to disqualify counsel for Mr. Bikundi, because his lawyer, Sheryl Wood, previously represented Mr. Igwacho, his codefendant, in connection with the Government's investigation of the pending charges. *See* Gov't's Mot. Disqualify Sheryl Wood as Counsel for Def. Michael Bikundi, Sr. ("Gov't's Mot."), ECF No. 78. For the reasons stated below, the Government's motion is granted.

## I.    BACKGROUND

The Superseding Indictment alleges that Mr. Igwacho and Mr. Bikundi conspired together and with others to defraud the D.C. Medicaid Program through the submission of false

---

[*] This Memorandum Opinion was originally issued under seal on February 10, 2015, along with a public order. This Memorandum Opinion is now being issued publicly with redactions, following consultation with the U.S. Attorney's Office to ensure the protection of information material to confidential law enforcement interests.

and fraudulent claims and other paperwork.[1]  Prior to seeking the original indictment, and prior

to the superseding indictment in this case, the Government investigated the relevant parties.  As

detailed below, at various points during the investigation and subsequent criminal proceedings,

Ms. Wood represented Mr. Igwacho, Mr. Bikundi, and six of the companies under investigation.

A.    **Factual Background**

1.    ***Ms. Wood's Representation of Mr. Igwacho***

On July 23, 2014, the Government notified Mr. Igwacho that he was the subject of a

federal investigation, advised him to obtain counsel, and requested an opportunity to meet with

him in order to discuss the investigation.  *See* Ex. A, Gov't's Suppl. Mot. Disqualify Sheryl

Wood as Counsel for Def. Michael Bikundi, Sr. ("Gov't Suppl."), ECF No. 89.  Shortly

thereafter, on August 7, 2014, Ms. Wood advised the Government via letter that she had been

retained to represent Mr. Igwacho.  *See* Ex. B., Gov't's Suppl.

On September 5, 2014, Ms. Wood met individually with the Government to discuss the

ongoing investigation into the alleged healthcare fraud.  *See* Gov't's Suppl. at 2.  During the

meeting, the Government disclosed to Ms. Wood evidence that it had obtained regarding

potentially fraudulent Medicaid billings.  *Id.*  Subsequently, on September 26, 2014 and October

1, 2014, the Government interviewed Mr. Igwacho regarding the investigation.  *Id.* at 2–3.  In her

capacity as Mr. Igwacho's counsel, Ms. Wood attended both interview sessions.  *Id.*  Ms. Wood

also spoke privately with Mr. Igwacho prior to the first interview session and after both interview

sessions.  *See* Rough Transcript of Hearing (January 16, 2015) ("Jan. 16, 2015 Tr."), at 106–07.

Following the second meeting, the Government attempted to schedule a third interview with Mr.

Igwacho.  After originally scheduling a follow-up interview for October 6, 2014, Ms. Wood

---

[1] Both of these defendants have also been charged with other offenses related to the alleged scheme.

cancelled due to a scheduling conflict and the interview was never subsequently conducted.[2]  *See*

Ex. A., Decl. of Sheryl R. Wood ("Wood Decl."), Def. Michael D. Bikundi Sr.'s Opp'n Gov't's

Mot. and Suppl. to Disqualify Sheryl Wood as Counsel ("Def.'s Opp'n"), ECF No. 98.[3]

     The record is unclear as to precisely when Ms. Wood's representation of Mr. Igwacho

terminated.  On October 8, 2014, after canceling the scheduled third interview session,

Ms. Wood advised the Government that she no longer represented Mr. Igwacho.  Gov't's Suppl.

at 3.  Nevertheless, according to the Government, on November 10, 2014, Ms. Wood advised the

Government that she might be able to continue her representation of Mr. Igwacho, and the

parties once again scheduled a third interview session.  *Id.*  The next day, November 11, 2014,

Ms. Wood advised the Government that she could not represent Mr. Igwacho and the proposed

interview session was again cancelled.  *Id.*

     During the period from October 17, 2014 through at least November 12, 2014, Ms. Wood

assisted Mr. Igwacho in obtaining counsel from the Federal Public Defenders Office.  *See* Wood

Decl. at ¶¶ 8–12.  Mr. Igwacho was approved for representation by the Federal Public

Defender's Office on November 25, 2014.  *See id.* at ¶ 19.  At some point during November

2014, Ms. Wood represents that she discussed with Mr. Igwacho her potential representation of

Mr. Bikundi if the latter were indicted, and that Mr. Igwacho indicated that he "would provide

his informed consent . . . if [Mr. Bikundi] were charged."  *See* Wood Decl. at ¶ 13.  Following

Mr. Bikundi's arrest, Ms. Wood received a telephone call from Mr. Igwacho indicating that Ms.

Wood needed to see Mr. Bikundi.  Ms. Wood "understood" the call to be consistent with "Mr.

---

[2] The parties dispute whether, during the course of the interview sessions, the Government notified Ms. Wood of her potential conflict.  *See* Wood Decl. at ¶ 4 ("There was no formal meeting where the Government discussed conflict of interest with me regarding Mr. Igwacho and Mr. Bikundi.").

[3] Counsel mistakenly omitted several exhibits to her original brief.  The exhibits are contained in a Notice of Errata filed with the Court.  *See* Notice of Errata Regarding Failure to Attach Certificate of Service, Exhibits and Proposed Order to Def.'s Opp'n, ECF No. 99-2.

Igwacho's willingness to provide his informed consent for [Ms. Wood] to represent Mr.

Bikundi." Wood Decl. ¶ 16. Ms. Wood "did not pursue reaffirming [Mr. Igwacho's] informed

consent." *Id.* Ms. Wood has not submitted any documentation confirming that Mr. Igwacho

provided his informed consent to her subsequent representation of Mr. Bikundi.

On December 18, 2014, a grand jury issued a superseding indictment against Mr.

Igwacho charging: (1) conspiracy to commit healthcare fraud, in violation of 18 U.S.C. § 1349;

(2) health care fraud, in violation of 18 U.S.C. § 1347; and (3) two counts of making false

statements relating to heath care matters, in violation of 18 U.S.C. § 1035. *See* Superseding

Indictment.

### 2.    *Ms. Wood's Representation of Mr. Bikundi*

On October 6, 2014, the Government served Mr. Bikundi with a letter in his individual

capacity and in his capacity as President of Global Healthcare, Inc. informing him that he was

the subject of a federal investigation, advising him to obtain counsel, and requesting an

opportunity to meet with him in order to discuss the investigation. *See* Ex. D., Gov't's Suppl.

Ms. Wood learned of the letter the following week but did not initially represent Mr. Bikundi.

*See* Wood Decl. at ¶ 9. Mr. Bikundi originally retained Karl Chen to represent him and Mr.

Chen attended a meeting with the Government regarding the charges against Mr. Bikundi. *See*

Gov't's Suppl. at 3.

On December 16, 2014, Ms. Wood contacted the Government via email and requested

that the Government return certain travel documents to Mr. Bikundi in order to permit Mr.

Bikundi to visit his ailing mother in Cameroon. *See* Ex. E, Gov't's Suppl. The next day, on

December 17, 2014, the Government responded by email to Ms. Wood and informed her that the

Government would only speak with Mr. Bikundi's criminal counsel with respect to his case. On

December 18, 2014, Ms. Wood informed the Government by letter that she was specifically

retained by Mr. Bikundi "to represent him in his efforts to have his travel documents . . . returned

to him" and that Mr. Chen "only represents Mr. Bikundi with regard to the debrief letter that he

received . . . ." *Id.*  The next day, on December 19, 2014, Mr. Chen notified the Government that

he no longer represented Mr. Bikundi.  *See* Ex. G., Gov't's Suppl.  Following Mr. Bikundi's

indictment, Ms. Wood entered a notice of appearance on his behalf on December 23, 2014.

The superseding indictment charges Mr. Bikundi with: (1) conspiracy to commit

healthcare fraud, in violation of 18 U.S.C. § 1349; (2) health care fraud, in violation of 18 U.S.C.

§ 1347; (3) two counts of money laundering, in violation of 18 U.S.C. § 1956; and (4) engaging

in monetary transactions in property derived from specified unlawful activity, in violation of 18

U.S.C. § 1957.  *See* Superseding Indictment.

### 3.      *Ms. Wood's Representation of Related Companies*

In late July 2014, in addition to providing Mr. Igwacho with a subject letter, the

Government served Mr. Igwacho with grand jury subpoenas for two companies, CFC Home

Trade and Investment, LLC ("CFC") and Cavicash, for which companies Mr. Igwacho serves as

the registered agent.  *See* Gov't's Suppl. at 1.  The Government also served Mr. Bikundi with

grand jury subpoenas for three companies, Global Healthcare, Inc., Tri-Continental Trade &

Development, Inc., and Flo-Diamond, Inc.  *Id.* at 2.  Mr. Bikundi served as an executive officer

and was part owner of Global Healthcare, Inc., and served as a director of Tri-Continental Trade

& Development, Inc.  S*ee* Superseding Indictment at ¶ 21, 33.  Finally, a week later, the

Government served Michael Bikundi Jr., who is the son of Mr. Bikundi, with a grand jury

subpoena for Global Express, a subcontractor for Global Healthcare, Inc., and for which Mr.

Bikundi Jr. serves as the registered agent.  Gov't's Suppl. at 2.  Although Mr. Bikundi Jr. was not

charged with any offense in the superseding indictment, other co-defendants charged in the superseding indictment hold positions at the companies subject to the grand jury subpoenas. *See* Superseding Indictment at ¶ 20 ("Defendant Florence Bikundi was a director, administrator, officer, and primary owner/stockholder of three HCAs operating in the District of Columbia and Maryland:  two entities named Global Healthcare, Inc. and one named Flo-Diamond, Inc."); *id.* at ¶ 22 ("Defendant Christian S. Asongcha . . . was employed as the Office Manager of [Global Healthcare, Inc.] . . . ."); *id.* at ¶ 23 ("Defendant Melissa A. Williams . . . was employed as [Global Healthcare, Inc.'s] Human Resources Officer . . . ."); *id.* at ¶ 24 ("Defendant Elvis N. Atabe . . . was employed by [Global Healthcare, Inc.] as the Quality Assurance Specialist."); *id.* at ¶ 26 ("Defendant Irene M. Igwacho was a registered nurse and was employed by [Global Healthcare, Inc.] as a [personal care aide]."); *id.* at ¶ 27 ("Defendant Berenice W. Igwacho was employed by [Global Healthcare, Inc.] as a [personal care aide]."); *id.* at ¶ 28 (Defendant Atawan Mundu John . . . was employed by [Global Healthcare, Inc.] as a [personal care aide].").

On August 7, 2014, Ms. Wood informed the Government by letter that she had been retained by Mr. Bikundi—even though subpoenas had been issued to Mr. Igwacho, Mr. Bikundi, and Mr. Bikundi Jr.—to represent all six companies in response to the grand jury subpoenas. *See* Ex. B, Gov't Suppl.  This is the same letter by which Ms. Wood advised the Government that she represented Mr. Igwacho, and on whose behalf she requested additional time to schedule Mr. Igwacho's original interview session with the Government.  *See id.*

On September 25, 2014, Ms. Wood responded to the grand jury subpoenas on behalf of three of the six companies, Tri-Continental Trade and Development, Inc., Flo Diamond, Inc., and Global Healthcare, Inc., representing that no responsive documents were found.  *See* Ex. C,

Gov't's Suppl.  The record does not indicate whether any of the other companies have submitted responses to the grand jury subpoenas.

*       *       *

In summary, Ms. Wood represented Mr. Igwacho during the investigatory portion of the current case, including in two meetings with the Government.  During this same period of time, and with respect to the same investigation, Ms. Wood represented six companies in their response to grand jury subpoenas.  Ms. Wood also represented Mr. Bikundi following his indictment, and in certain respects prior to his indictment.

### B.      Procedural History

On December 23, 2014, at a status conference held shortly after the arraignment on the superseding indictment, the Government made an oral motion to disqualify Ms. Wood from representing Mr. Bikundi in light of her prior representation of Mr. Igwacho.  During the status conference, the Court heard from the Government, Ms. Wood, and counsel for Mr. Igwacho regarding the nature of Ms. Wood's prior representation of Mr. Igwacho.  In agreement with Ms. Wood, the portion of the hearing concerning disqualification was conducted outside of Mr. Bikundi's hearing, due to the confidential nature of Ms. Wood's prior representation of Mr. Igwacho.  *See* Rough Transcript of Hearing (December 23, 2014) ("Dec. 23, 2014 Tr.") at 8–22. The Court also scheduled a hearing for January 16, 2015 regarding the motion and permitted briefing by the parties.  Due to the confidential nature of Ms. Wood's prior representation of Mr. Igwacho, Ms. Wood did not share the Government's motion to disqualify with Mr. Bikundi.  *See* Jan. 16, 2015 Tr. at 63–64.  To ensure that no prejudice would accrue to Mr. Bikundi should Ms. Wood be disqualified following the hearing, the Court required stand-in counsel to be available for Mr. Bikundi.

On January 16, 2015, the Court heard argument and testimony regarding Ms. Wood's potential disqualification. The portions of the hearing relating to the details of Ms. Wood's prior representation of Mr. Igwacho were conducted outside the presence of Mr. Bikundi. *See id.* at 78–136.[4] During the course of the hearing, the Court heard testimony from Mr. Igwacho and his counsel regarding Mr. Igwacho's willingness to permit Ms. Wood to represent Mr. Bikundi. *Id.* at 129–135. After detailed questioning by the Court, and following separate consultation with his counsel, Mr. Igwacho testified that he was willing to waive any actual or potential conflict of interest under Rule 1.9 of the District of Columbia Rules of Professional Conduct stemming from Ms. Wood's subsequent representation of Mr. Bikundi and gave his consent to Ms. Wood to continue representing Mr. Bikundi. *Id.* Mr. Igwacho was not willing, however, to waive his right under Rule 1.6 of the District of Columbia Rules of Professional Conduct regarding his "confidences and secrets" and would not consent to Ms. Wood disclosing those confidences and secrets. *Id.* at 60.

The Court also heard testimony from Mr. Bikundi regarding his willingness to waive his constitutional right to the effective assistance of counsel. *Id.* at 137–142. The Court informed Mr. Bikundi of his constitutional right to the effective assistance of counsel and questioned him regarding his understanding of this right. *Id.* The Court explained to Mr. Bikundi that because of certain ethical limitations placed upon Ms. Wood from her prior representation of Mr. Igwacho, Ms. Wood might be unable to provide the effective assistance of counsel to which Mr. Bikundi was otherwise entitled. *Id.* The Court also asked Mr. Bikundi if he would like to consult with independent and conflict-free counsel to assure that he received conflict-free advice regarding his waiver of his constitutional right to the effective assistance of counsel. *Id.* Before

---

[4] As a result, Mr. Bikundi was not present for all portions of the hearing discussing Mr. Igwacho's meetings with the Government. *See* Jan. 16, 2015 Hr. at 78–136.

answering, Mr. Bikundi indicated that he needed additional time to consider his options. *Id.* Accordingly, the Court adjourned and set another hearing for January 22, 2015.

At the second hearing, the Court requested that Mr. Bikundi consult with independent and conflict-free counsel prior to making any decision on the record regarding his desire to continue with Ms. Wood as his counsel. After consulting with conflict free counsel, and after a detailed explanation of his rights by the Court, Mr. Bikundi expressed his choice to continue with Ms. Wood as his counsel. *See* Rough Transcript of Hearing (January 22, 2015) ("Jan. 22, 2015 Tr."), at 6–8.

## II.    LEGAL STANDARD

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant's Sixth Amendment right includes the "right to representation that is free from conflicts of interest," *Wood v. Georgia*, 450 U.S. 261, 271 (1981), but also carries a "presumption in favor of counsel of choice," *Wheat v. United States*, 486 U.S. 153, 160 (1988). At the same time, a criminal defendant's right to retain counsel of his choice is not absolute. The "essential aim" of the Sixth Amendment "is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. Thus, even if a defendant waives the right to conflict-free representation, the presumption in favor of defendant's counsel of choice "may be overcome not only by a demonstration of actual conflict but also by a showing of a serious potential for conflict." *Wheat*, 486 U.S. at 163-64.

As the D.C. Circuit explained in *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 199-200 (D.C. Cir. 2013), "a defendant's counsel-of-choice right may sometimes be trumped by

a conflict of interest."  This is because "where a defendant's chosen counsel suffers from a conflict of interest, . . . the court's own institutional interests" are implicated.  *Id.*  Guaranteeing conflict-free counsel protects not just defendants' rights, but also the "'[f]ederal courts['] . . . independent interest in ensuring that criminal trials are conducted within the ethical standards of the [legal] profession and that legal proceedings appear fair to all who observe them.'" *Id.* (alterations in original) (quoting *Wheat*, 486 U.S. at 161).

Since the Court has an independent interest in investigating potential conflicts, *see Wheat*, 486 U.S. at 161, the Court retains "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* at 163.  Accordingly, "[i]f in the context of a particular case the district court believes a conflict is intolerable, it may decline to accept a defendant's waiver." *Lopesierra-Gutierrez*, 708 F.3d at 202.  "In making this determination, a court balances the defendant's right to choose his representative against *both* the defendant's countervailing right to conflict-free representation *and* the court's independent interest in the integrity of criminal proceedings." *Id.* at 200 (emphasis in original).  The key inquiry in this analysis is the "nature and extent of the conflict." *Id.*

## III.    DISCUSSION

In the instant case, the Government alleges a conflict arising from the successive representation by the same lawyer, Ms. Wood, of two of the co-defendants in this case, Mr. Igwacho and Mr. Bikundi.  Ms. Wood previously recognized the potential for a conflict of interest concerning her successive representation of Mr. Igwacho and Mr. Bikundi when she first gauged Mr. Igwacho's willingness to waive any conflict. *See* Wood Decl. at ¶ 13 (describing that

Mr. Igwacho "agreed that he would provide his informed consent" for Ms. Wood to represent

Mr. Bikundi after Ms. Wood "explained the potential conflict to him").  Now, however,

Ms. Wood disputes the existence of any potential or actual conflict in this case.

Ms. Wood represented Mr. Igwacho over a critical period of approximately ten weeks,

after Mr. Igwacho had received notification from the Government that he was the subject of a

criminal investigation but prior to his subsequent indictment.[5]  Ms. Wood has now entered an

appearance, post-indictment, for Mr. Igwacho's stepfather and co-defendant, Mr. Bikundi.  On

their face, these circumstances pose a serious potential for conflict since the subject matter of the

successive representation is identical and the two clients involved are now co-defendants.   While

Ms. Wood may be able to avoid a violation of the ethical rule set out in D.C. Rule of

Professional Conduct 1.9(a) because her prior client, Mr. Igwacho, has given his "informed

consent" to her successive representation on the same matter of his stepfather and co-defendant,

Mr. Bikundi, this does not alleviate the Court's concerns about the "nature and extent of the

conflict."  *Lopesierra-Gutierrez*, 708 F.3d at 200.  The circumstances of Ms. Wood's

representation of two co-defendants, as well as six companies in which the other co-defendants

were intimately involved, reveal the potential for a serious conflict to manifest during trial.

Additionally, although both Messrs. Bikundi and Igwacho have nominally consented to the

continued successive representation by Ms. Wood of Mr. Bikundi, the Court has serious

concerns regarding the voluntariness of the informed consent obtained in the present case.  The

severity of the conflict and the voluntariness of the defendants' informed consent are discussed

below.

---

[5] Ms. Wood's representation included discussions and meetings with the Government about the events underlying the charged offense conduct.

**A.**      **Subsequent Representation Creates a Significant Conflict in the Present Case**

Rule 1.9 of the D.C. Rules of Professional Conduct provides that "[a] lawyer who has

formerly represented a client in a matter shall not thereafter represent another person in the same

or a substantially related matter in which that person's interests are materially adverse to the

interests of the former client unless the former client gives informed consent."  The parties do

not dispute that Ms. Wood's successive representation of two co-defendants concerns a

"substantially related matter," but do dispute the severity of any potential or actual conflict.  Ms.

Wood maintains that Mr. Igwacho and Mr. Bikundi's interests are not "materially adverse," as

any evidence put forth by Mr. Igwacho would not "incriminate Mr. Bikundi on its face" and

therefore does not warrant disqualification.  *See* Def.'s Opp'n at 7.  Ms. Wood's position strains

credulity.

Ms. Wood misstates the requirements for showing "material adversity," which perhaps

explains her view that a conflict of interest (or the significant potential for one) does not exist in

the present case.  "Material adversity" does not require showing that evidence be "directly

incriminat[ing]," as Ms. Wood asserts.  *See id.* at 10.  Rather, the limitations placed upon counsel

are broader and encompass situations that (1) "pit the duty of loyalty to each client against the

loyalty to the other;" and (2) "risk breaching the duty of confidentiality to the client-witnesses."

*See* Lawyer Examining a Client as an Adverse Witness, or Conducting Third Party Discovery of

the Client, ABA Formal Op. 92-367.  As evidenced in the case law discussed below, such

adversity includes situations where counsel must impeach the testimony of a former client or

present inconsistent case theories (even where not directly inculpatory) as between the former

client and the current client.

"As numerous cases have recognized, [Rule 1.9] requires disqualification when a former client seeks to cooperate with the government and testify against the present client."  *See United States v. Alvarez*, No. 10-CR-20547, 2010 WL 4774649, at *5 (S.D. Fla. Nov. 16, 2010) (collecting cases); *see also Nix v. Whiteside*, 475 U.S. 157, 188 n.7, (1986) (Blackmun, J., concurring) (observing that "an attorney who has previously represented one of the state's witnesses has a continuing obligation to that former client not to reveal confidential information received during the course of the prior representation.  That continuing duty could conflict with his obligation to his present client, the defendant, to cross-examine the state's witnesses zealously").[6]

Although Mr. Igwacho is a co-defendant in the present case, and not a cooperating witness, similar concerns still apply.  For instance, if Mr. Igwacho elects to testify, Ms. Wood will be forced to cross-examine her former client.  Since Mr. Igwacho has not waived the requirement that Ms. Wood maintain his "confidences and secrets," Ms. Wood is obligated to refrain from using information obtained from her representation of him during any cross-examination of him.  Such limits could undermine her ability to successfully mount an effective cross-examination.  To be sure, Ms. Wood might obtain impeachment materials during the ordinary course of criminal discovery, yet obtaining impeachment materials from a third-party does not cure the appearance of impropriety inherent in her cross-examination.  *See United States v. Davis*, 780 F.  Supp. 21, 23–24 (D.D.C. 1991) ("[E]ven if [challenged defense counsel] would have independent access to all possible impeaching information, the appearance of a conflict in using the information against a former client of his firm requires his

[6]

disqualification.").  Moreover, Ms. Wood would expose herself to potential ethical censure should she err and mistakenly confront Mr. Igwacho with information obtained during her representation of him, but which she believed to come from an independent source.  Or, alternatively, Ms. Wood might shy away from conducting a thorough examination of Mr. Igwacho for fear of such censure.  Under either scenario, the harm to the "integrity of [the] criminal proceeding" is manifest.  *Lopesierra-Gutierrez*, 708 F.3d at 200.

Even beyond cross-examination, Ms. Wood's loyalty to her former client will be tested. Although discussed in the context of the joint representation of multiple co-defendants, the Second Circuit outlined several of the conflicts facing zealous defense counsel during the course of a criminal trial.  These include:

> whether or not to present a defense that helps one defendant more than the other; whether or not to cross-examine a witness whose testimony may help one defendant and hurt the other; whether to have one defendant testify while the other remains silent; whether to have neither defendant testify because one would be a poor or vulnerable witness; whether or not to emphasize in summation that certain evidence is admitted only against (or is less compelling against) one defendant rather than the other; whether or not to argue at sentencing that one defendant's role in the criminal enterprise was shown only to be subordinate to that of the other defendant.

*United States v. Curcio*, 680 F.2d 881, 887 (2d Cir. 1982).  Such dilemmas taint the integrity of the criminal proceeding and "are insidious because it often is not clear that the conflict of interests, and not pure trial strategy, are the reasons for the tactics adopted—or forgone—at trial."  *Id.*

The potential evidence and arguments in the present case illustrate precisely the concerns described by the Second Circuit.  The Government alleges that Mr. Bikundi "transferred the proceeds of specified unlawful activity to the bank accounts in the names of two shell corporations" including CFC, the company of which Mr. Igwacho is a registered agent.  *See*

Superseding Indictment ¶ 86(a).  Mr. Bikundi is also charged with laundering money through bank accounts at CFC.  *See id.*  Mr. Igwacho's defense may be that although he is the registered agent of CFC, ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████  *See* Gov't's Mot. at 4.  This defense would be directly adverse to Mr. Bikundi's interest in shifting the blame for any financial activities and improprieties at CFC to Mr. Igwacho.  If permitted to continue her representation, Ms. Wood would be forced to navigate through these competing theories of the case.  Yet, "in the context of successive representations, we find it difficult to envision circumstances more fraught with inherent conflict than where an appointed attorney representing a reluctant defendant must present a defense theory inculpating the attorney's former client, particularly where the former representation was factually intertwined with the criminal defendant's case."  *Church v. Sullivan*, 942 F.2d 1501, 1511 (10th Cir. 1991).

In arguing that the interests of Mr. Bikundi and Mr. Igwacho are not materially adverse, Ms. Wood relies primarily on *United States v. Morrell-Corrada*, 343 F. Supp. 2d 80, 85 (D.P.R. 2004).  Yet, Ms. Wood's reliance on *Morrell-Corrada* is sorely misplaced.  In *Morrell-Corrada*, the court permitted counsel to continue representation of a defendant even though counsel had previously met with a cooperating witness "three times for a series of initial consultations" short of retention.  *Id.* at 82.  The cooperating witness had disclosed to the attorney his intention to cooperate with the Government, and the attorney provided a recommendation for a different attorney to represent him during his cooperation.  *Id.* at 83.  The court declined to disqualify the attorney from subsequently representing a criminal defendant because an attorney-client relationship had never formed between the attorney and the cooperating witness, the cooperating

witness's grand jury testimony did not mention the defendant, and the witness stated during a government debriefing session that he "had never heard" of the defendant and "did not know about [the defendant]." *Id.* at 85. As a result, the court concluded that the parties' interests were not adverse, as the parties did not know each other and the cooperating witness's "anticipated testimony [did] not encompass [the] defendant." *Id.* This is a far cry from the present situation, where Mr. Igwacho is Mr. Bikundi's stepson, business partner, and alleged co-conspirator and where certain potential theories of the case are irreconcilable.

Ms. Wood also argues that concerns regarding adversity are overstated in the present case because Mr. Igwacho has already waived any confidences that he might have shared with Ms. Wood. *See* Def.'s Opp'n at 12–16. Although Mr. Igwacho expressly *declined* to waive the disclosure of such confidences at the January 16, 2015 hearing, Ms. Wood argues that Mr. Igwacho's actions permit Ms. Wood to reveal his confidences. Ms. Wood's argument only further highlights the conflict inherent in her representation of Mr. Bikundi. Against the express wishes of her former client, Ms. Wood is arguing that her former client has waived all confidences made to her and that she should be able to expose those confidences in open court, with the possible effect of exposing her former client to criminal penalty.

In any event, Ms. Wood's argument is legally incorrect. Ms. Wood argues that because Mr. Igwacho shared information with two unidentified family members about meeting with the Government, Mr. Igwacho has waived the attorney-client privilege with respect to all the confidences maintained by Ms. Wood. Def.'s Opp'n at 12–13. Critically, Ms. Wood has not suggested that Mr. Igwacho revealed his confidential communications *with Ms. Wood* to any other party, only that he shared the substance of his communications *with the Government* to other parties. *See* Def.'s Opp'n at 13 ("Specifically, [Mr. Igwacho] shared information regarding

the questions he was asked by the government . . . .").[7]  Yet the attorney-client privilege protects only *communications* made to an attorney and not the underlying information.  *See Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.").  Accordingly, Mr. Igwacho has not waived the attorney-client privilege with respect to his confidential communications with Ms. Wood.

In addition, regardless of the issue of privilege, Ms. Wood has an obligation under Rule 1.6 of the D.C. Rules of Professional Conduct to protect Mr. Igwacho's secrets.  A "'secret' refers to other information gained in the professional relationship that the client has requested be held inviolate, or the disclosure of which would be embarrassing, or would be likely to be detrimental, to the client."  *Id.*  As noted in the comments to Rule 1.6, the requirement of confidentiality "exists without regard to the nature or source of the information or the fact that others share the knowledge. It reflects not only the principles underlying the attorney-client privilege, but the lawyer's duty of loyalty to the client."  *See id.*, cmt. 8.  Thus, Ms. Wood must protect not only the contents of the communications between her and Mr. Igwacho, she must also protect information acquired during her professional relationship with Mr. Igwacho, regardless of whether such information is privileged.

Ms. Wood makes two final arguments to get around the limitations placed upon her ability to disclose confidential and secret material.  Ms. Wood argues that Mr. Igwacho should specifically reveal to Ms. Wood all the secrets he wishes be kept inviolate so that Ms. Wood may protect those secrets and not use them during her representation of Mr. Bikundi.  Ms. Wood's suggestion is not well taken and only further highlights the dangers of Ms. Wood's successive

---

[7] Ms. Wood has not identified to whom Mr. Igwacho revealed his meetings with the Government or how she learned of this fact.

representation of Mr. Igwacho and Mr. Bikundi since Ms. Wood is apparently unsure of what information Mr. Igwacho has deemed secret.  The Court will not require a further disclosure by Mr. Igwacho to Ms. Wood.

Ms. Wood also argues that independent co-counsel could cross-examine Mr. Igwacho should he elect to testify.  This same argument was considered and rejected in *United States v. Davis*, 780 F. Supp. at 22–23, where two law partners attempted to erect a wall to permit one to cross-examine the former client of the other.  *See also United States v. Miranda*, 936 F. Supp. 945, 951 (S.D. Fla. 1996) (rejecting proposal for independent counsel to "handle any and all aspect[s] of the trial" relating to a former client, including investigation, cross-examination, closing argument, and all legal issues).  Although *Davis* concerned the ability of two law partners to maintain confidentiality, the Court has similar concerns regarding the ability of any co-counsel to stay fully independent from Ms. Wood.  Furthermore, as discussed above, the present conflict extends beyond just the cross-examination of Mr. Igwacho and infects every aspect of the trial presentation.  The only way to cure such a conflict is to disqualify Ms. Wood from representing Mr. Bikundi and to permit him to retain alternative counsel.

### B.    Voluntariness of Any Conflict Waiver

Notwithstanding that Mr. Igwacho has consented to Ms. Wood's continued representation of Mr. Bikundi, and that Mr. Bikundi has waived his right to conflict-free counsel, the Court is concerned about the voluntariness of both parties' waiver of their rights.  "[W]aivers [of constitutional rights] are subject to strict oversight by the court, which must find that they are made knowingly and voluntarily."  *Lopesierra-Gutierrez*, 708 F.3d at 200.  Where "the conflict of interest jeopardizes the integrity of the proceedings," "a court may decline to accept a waiver [of the conflict of interest]."  *Id.*

Mr. Igwacho's mother and stepfather are his co-defendants in the present case.  As a result, there is a strong possibility (or likelihood) that his waiver reflects a desire to please his mother and stepfather and not be perceived by them or other family members as interfering with Mr. Bikundi's choice of representation.  Avoiding the additional stress to his family of being perceived as forcing his stepfather to obtain different counsel is an obvious factor that may play into Mr. Igwacho's willingness to consent to Ms. Wood's successive representation.  Moreover, pretrial service reports indicate that Mr. Igwacho is unemployed and may be dependent upon his family for financial support.  *See* Jan. 16, 2015 Tr. at 133.  Mr. Igwacho's partial financial dependence may also contribute to him acceding to his family and parents' wishes, rather than acting in his own self-interest.

Mr. Bikundi's waiver of his right to the effective assistance of counsel likewise raises grave concerns.  Mr. Bikundi was queried about the risks to him in continuing with Ms. Wood as counsel.  In response to those inquiries, and following consultation with conflict-free counsel, Mr. Bikundi indicated that he waived his right to the effective assistance of conflict-free counsel in order to have his preferred counsel, Ms. Wood.  Serious questions arise, however, about how fully informed Mr. Bikundi can be regarding the circumstances of Ms. Wood's prior representation of Mr. Igwacho given Mr. Igwacho's refusal to waive his secrets and confidences.[8]  *See Wheat*, 486 U.S. at 162–63 ("These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care

---

[8] ████████████████████████████████████████████████████

with which he conveys all the necessary information to them.").  Moreover, Mr. Bikundi was

absent from the portions of the various hearings that discussed the details and nature of

Ms. Wood's prior representation of Mr. Igwacho.  When Mr. Bikundi discovers all that

Ms. Wood has kept secret from him in the course of discovery and in preparation for trial, his

trust and confidence in her may be adversely affected.[9]

The Court has serious concerns regarding the voluntariness of the defendants' waivers,

the corresponding integrity of these proceedings, and the Court's ability to ensure the full

compliance by counsel with the professional conduct rules that apply.  As a result, the Court

declines to accept the defendants' proffered waivers.

\*      \*      \*

As the present case illustrates, there are significant dangers inherent in the representation

of multiple defendants in the course of the same criminal investigation.  At various points during

this criminal proceeding, Ms. Wood purported to represent six organizations under investigation,

along with an executive and an employee from those organizations.  Ms. Wood engaged in some

of these representations simultaneously (her representation of Mr. Igwacho and the six

organizations) and some successively (her subsequent representation of Mr. Bikundi).  Yet the

interests of the organizations, its executives and officers, and the individual employees are rarely

identical.[10]  Indeed, as the commentary to the D.C. Rules of Professional Conduct explain:



"There are times when the organization's interest may be or become adverse to those of one or more of its constituents. In such circumstances the lawyer should advise any constituent, whose interest the lawyer finds adverse to that of the organization, of the conflict or potential conflict of interest, that the lawyer cannot represent such constituent, and that such person may wish to obtain independent representation." *See* Rule 1.13, Cmt. 9, D.C. Rules of Prof'l Conduct.  Ms. Wood's actions in this case have flouted these requirements and her conduct in representing her diverse clientele in the same criminal matter gives this Court great pause.

The divergent interests of Ms. Woods' various current and former clients give rise to a serious conflict of interest that warrants her disqualification from the current matter.  Given the Court's concerns regarding the voluntariness of the defendants' waivers of the conflict of interest, and the corresponding integrity of these proceedings should Ms. Wood be permitted to remain in her current position, the Court rejects the defendants' proffered waivers of any conflict of interest.  Consistent with prior cases in this District, Ms. Wood is disqualified from continuing to represent Mr. Bikundi in this criminal proceeding.  *See United States v. Childress*, 58 F.3d 693, 735 (D.C. Cir. 1995) (finding no abuse of discretion in disqualifying defense counsel whose partner represented co-conspirator "because a conflict between [co-defendants] could have developed during the evolution of the government's conspiracy case); *Davis*, 780 F. Supp. at 22-23 (granting government motion for disqualification of defense counsel whose partner provided advice to cooperating witness whose testimony was used to arrest defendant and would be required at trial, noting "Court's interest in preserving the fairness of the trial in this matter").

**IV.**      **CONCLUSION**

For the reasons stated above, the Government's motion to disqualify Ms. Wood from

representing Michael Bikundi is granted.  Mr. Bikundi shall now have the opportunity to retain

new counsel or proceed with the services of his previously-appointed counsel.  This

Memorandum Opinion will be filed under seal for a limited period to provide the Government

the opportunity to propose any redactions necessary to preserve law enforcement interests.

An appropriate Order accompanies this Memorandum Opinion.


Date: February 13, 2015


_____
BERYL A. HOWELL
United States District Judge