## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MICHAEL BIKUNDI, SR., *et al.*,<br><br>Defendants. | Criminal Action No. 14-cr-0030 (BAH)<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

The defendant Michael Bikundi, Sr. ("the defendant"), his wife, Florence Bikundi, and others, are charged in a multi-count Superseding Indictment for participating in an alleged scheme to defraud the District of Columbia Medicaid Program. Incident to the government's investigation and prosecution of the defendant and his alleged co-conspirators, the government seized significant assets alleged to have been derived from or otherwise involved in the charged offenses. Now pending before the Court is the defendant's motion to vacate partially the seizure of certain of these assets in order to release a total of $132,165.00 seized from four domestic bank accounts and one foreign bank account (the "Disputed Funds"). *See* Def.'s Mot. Vacate Seizure Warr. ("Def.'s Mot."), ECF No. 149. In conjunction with his motion, the defendant has requested a pretrial hearing to challenge the sufficiency of the government's evidence supporting the seizure of these funds. *Id.* at 1. For the reasons stated below, the defendant's request for a pretrial hearing is denied and the defendant's motion to vacate partially the seizure warrants is denied in part and granted in part.

## I.      BACKGROUND

On February 18, 2014, a U.S. Magistrate Judge of this Court issued seizure warrants for property, including sixty-four financial accounts and five vehicles, based upon a 136-page affidavit alleging probable cause to believe that the property was subject to criminal forfeiture (1) as property "involved in a transaction or attempted transaction in violation of" federal criminal money laundering statutes, and (2) as property "derived, directly or indirectly, from gross proceeds traceable to the commission of a Federal health care offense," pursuant to 18 U.S.C. §§ 982(a)(1) and (a)(7), respectively.  Affidavit in Support of Seizure Warrants, dated February 18, 2014 ("First Aff.") ¶¶ 348–49, ECF No. 238-1.[1]  The affidavit also alleged probable cause to believe that the listed property was subject to civil forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C).  *Id.*

The following day, a grand jury indicted co-defendant Florence Bikundi on multiple counts of health care fraud and money laundering.  Indictment, ECF No. 1.  After further investigation, the grand jury returned a Superseding Indictment, on December 18, 2014, against eight additional defendants, including Michael Bikundi, who is charged with Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. § 1349 (Count One); Health Care Fraud, in violation of 18 U.S.C. § 1347 (Count Two); Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956(h) (Count Fifteen); Laundering of Monetary Instruments, in violation of 18 U.S.C. § 956(a)(1)(B)(i) (Counts Sixteen through Twenty-Two); and Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of 18 U.S.C. § 1957 (Counts Twenty-Three through Twenty-Five).  *See* Superseding Indictment, ECF No. 44.

---

[1] The First Affidavit is also docketed, under seal, at ECF No. 159-1.

While the original indictment contained a "Criminal Forfeiture Allegation" seeking forfeiture of a real property parcel in Mitchellville, Maryland, and a general money judgment "in the amount of at least $75,000,000," Indictment, Crim. Forfeiture Alleg. ¶¶ 1–2, the Superseding Indictment includes a more detailed "Forfeiture Allegation." Superseding Indictment, Forfeiture Alleg. Specifically, the Superseding Indictment seeks forfeiture, upon conviction of the health care fraud offenses alleged in Counts One, Two, Thirteen, or Fourteen,[2] of a money judgment "of at least $75,000,000," as well as eighty-seven listed properties—for which "the Grand Jury finds by probable cause . . . [are] subject to forfeiture," under 18 U.S.C. § 982(a)(7). *Id.*, Forfeiture Alleg. ¶ 1. The listed properties consist of six pieces of diamond jewelry, the real property parcel in Mitchellville, Maryland, as well as almost $73,000 in cash seized from that home, five vehicles, and funds held in seventy-four bank or other financial accounts, including the four domestic bank accounts at issue in the instant motion. *Id.* The Forfeiture Allegation further seeks forfeiture, without a specific grand jury probable cause finding, of property (1) "that constitutes or is derived, directly or indirectly, from gross proceeds traceable to" false statements in the submission of payment claims to the D.C. Medicaid Program, as charged in Counts Three through Twelve, under 18 U.S.C. § 982(a)(7), *id.* ¶ 2;[3] and (2) that is "involved in" the money laundering offenses charged in Counts Fifteen through Twenty-Five, or "any property traceable to such property," under 18 U.S.C. § 982(a)(1), *id.* ¶ 3.

On September 5, 2014, a U.S. Magistrate Judge of this Court issued a second seizure warrant based upon a 15-page affidavit alleging probable cause to believe that five additional

---

[2] Counts Thirteen and Fourteen allege health care fraud committed only by co-defendant Florence Bikundi. Superseding Indictment ¶ 78–82.

[3] The defendant is not named in these counts, and the government does not rely on these false statement charges as support for the seizure of the Disputed Funds. Gov't Supp. Br. Def.'s Mot. Vacate Seizure Warr. at 4, ECF No. 244.

bank accounts held at Banque Internationale du Cameroun pour l'Epargne et le Credit ("BICEC") in Cameroon, including the foreign account at issue in the instant motion, were subject to both civil and criminal forfeiture, as property "traceable to" federal health care fraud and "involved in a transaction or attempted transaction in violation of" a federal money laundering offense, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1)(A). Affidavit in Support of Seizure Warrants, dated September 5, 2014 ("Second Aff.") ¶¶ 1, 33, ECF No. 245-1.[4]

The government subsequently filed a Notice of Bill of Particulars for the Forfeiture Allegation in the Superseding Indictment identifying the five BICEC bank accounts listed in the Second Affidavit as subject to criminal forfeiture under 18 U.S.C. § 982(a)(7), upon conviction of an offense alleged in Counts Three through Twelve. Bill of Particulars ¶ A, ECF No. 119. The Bill of Particulars also listed ninety-two specific properties, including the eighty-seven properties identified in the Forfeiture Allegation as well as the five newly identified BICEC accounts, as subject to criminal forfeiture under 18 U.S.C. § 982(a)(1) upon conviction of an offense alleged in Count Fifteen. *Id.* at ¶ B.

The defendant now seeks the release of a total of $132,165.00 previously held in four domestic bank accounts seized pursuant to the first seizure warrant and one of the BICEC accounts seized pursuant to the second seizure warrant. Def.'s Mot. at 3–5. The First Affidavit designates the four domestic accounts containing Disputed Funds as Accounts H, I, W and AA. First Aff. ¶ 1. For each account, the First Affidavit identifies a total amount of funds traceable to

---

[4] At a hearing on July 31, 2015, to consider the instant motion, the government made representations regarding the forfeitability of the Disputed Funds that were neither included in the government's opposition brief to the defendant's motion nor supported by evidence then entered in the record. As a consequence, the Court reserved judgment on the defendant's motion and directed the government to file supplemental briefing addressing: (1) the requisite connection of the Disputed Funds to the charged offense conduct; and (2) the current location of the funds seized from the Cameroonian account at issue. *See* Minute Order, July 31, 2015. In conjunction with the filing of its supplemental brief, the government submitted a copy of the Second Affidavit. *See* Notice of Filing, ECF No. 245.

Medicaid payments. *Id.* ¶¶ 234, 236, 238, 240. In contrast to the traceable funds, however, the affidavit also lists "other" funds that are not alleged to be traceable to Medicaid payments. *Id.* Specifically, the First Affidavit alleges the following with regard to each account:

- Account H: Between November 2009 and December 2013, approximately $317,241.06 was deposited into this account. *Id.* ¶ 234. The First Affidavit alleges that $309,729.20 of these funds are traceable to Medicaid payments, but that "[o]ther deposits to the account include $7,200.00 in cash and $311.86 in interest earned on the account." *Id.*

- Account I: Between November 2009 and January 2014, approximately $634,929.06 was deposited into this account. *Id.* ¶ 236. The First Affidavit alleges that $588,664.97 of these funds are traceable to Medicaid payments, but that "[o]ther deposits to the account include $5,500.00 deposited from third parties, $29,500.00 in cash deposits, and the deposit of a $10,000 cashier's check." *Id.*

- Account W: Between March 2012 and November 2013, at least $140,756.66 was deposited into this account. *Id.* ¶ 238. The First Affidavit alleges that $123,688.94 of these funds are traceable to Medicaid payments, but that "[t]he rest of the funds deposited into this account consist of $8,750.00 in checks from third parties, $8,100.00 in cash, and $217.72 in interest." *Id.*

- Account AA: Between March 2012 and November 2013, at least $464,771.16 was deposited into this account. *Id.* ¶ 240. The First Affidavit alleges that $430,360.00 of these funds are traceable to Medicaid payments, but "[o]ther deposits to the account include $17,500.00 in cash, $15,615.00 from the sale of a vehicle, and $126.16 in interest." *Id.*

Finally, the defendant seeks release of Disputed Funds from a seized BICEC account, XXX-121. Def.'s Mot. at 4–5. The Second Affidavit alleges that this account received deposits between May 12, 2008, when the defendant opened the account, and April 4, 2013, that originated in bank accounts referred to as Accounts AA and HHH in the First Affidavit. Second Aff. ¶ 14–17. To support the seizure of funds held in the BICEC account, the Second Affidavit incorporates the First Affidavit's allegations regarding Account AA and further alleges that Account HHH received funds traceable to Medicaid prior to being closed in March 2012. *Id.* The government has advised that the funds from BICEC account XXX-121 were transferred to a U.S. Department of Treasury Suspense Account on May 29, 2015. Gov't Supp. Br. Def.'s Mot. Vacate Seizure Warr. ("Gov't Supp. Br.") at 2–3, ECF No. 244.

Noting that the First Affidavit explicitly indicates that certain seized funds are not directly traceable to any alleged illegal conduct, the defendant asserts that the government has failed to establish probable cause that the Disputed Funds were subject to seizure and asks the Court to order their release. Def.'s Mot. at 1–5. In total, the defendant requests the release of $102,165.00 from the four domestic accounts comprised of the following funds: (1) $62,300.00 in cash deposits; (2) $10,000.00 in cashier's check deposits; (3) $14,250.00 in deposits from checks issued by unidentified third parties; and (4) $15,615.00 in proceeds from the sale on an unspecified date of an unidentified vehicle. *Id.* at 4.

The defendant likewise seeks $30,000.00 seized from the BICEC account, which funds the defendant asserts was transferred into that account from Account AA. *Id.* at 4–5. The defendant contends that these funds are not subject to seizure because "Account AA held funds that are not traceable to Medicaid," *id.* at 5, namely, the "[o]ther deposits to the account include $17,500.00 in cash, $15,615.00 from the sale of a vehicle," First Aff. ¶ 240. As the government

correctly notes, however, the defendant has double-counted the BICEC funds in calculating the total amount he seeks to have released, since the same Disputed Funds that are at issue from Account AA were transferred to the BICEC account. Gov't Supp. Br. at 3 n.6. Thus, the remaining discussion will address only the Disputed Funds seized from the four domestic accounts.

## II. DISCUSSION

As a threshold matter, the defendant asserts that access to the Disputed Funds is necessary to meet the costs of his "household necessities," not to pay for his defense against the criminal charges. Def.'s Mot. at 1. Consequently, he raises no Sixth Amendment claim that the seizure of the Disputed Funds implicates his right to counsel. *Id*. at 9 n.1; Def.'s Reply Gov't Opp'n Def.'s Mot. Vacate Seizure Warr. ("Def.'s Reply") at 1–2, ECF No. 195. Nonetheless, the defendant argues that examination of the First Affidavit reveals that the Disputed Funds "are not traceable to Medicaid[,]" "are not part of the indicted offenses[,]" and "have absolutely no nexus to the criminal activity alleged in the indictment." Def.'s Reply at 2. Citing *Kaley v. United States*, 134 S. Ct. 1090 (2014), the defendant asserts that the continued seizure of the Disputed Funds violates the Due Process Clause of the Fifth Amendment and requests a pretrial hearing to determine their traceability to the charged criminal conduct. *Id*. at 1–2.

In its initial and supplemental responses to the defendant's motion, the government objects to the defendant's request for the partial release of the Disputed Funds and for a pretrial hearing on their traceability to the charged offenses. The government's opposition rests principally on the following grounds: (1) the defendant's right to challenge the forfeitability of the disputed assets is limited to the post-trial procedures provided by Federal Rule of Criminal Procedure 32.2, Gov.'t Opp'n Def.'s Mot. Vacate Seizure Warr. ("Gov't Opp'n") at 6–9, ECF

No. 194; (2) the defendant has failed to demonstrate that a pretrial hearing is required under the Due Process framework outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976), *id.* at 9–16; and (3) the defendant has failed to make a threshold showing that he requires the Disputed Funds to pay for ordinary and necessary living expenses, *id.* at 17–20. These arguments are addressed *seriatim* below, following review of the legal principles applicable to pretrial seizure of property pending final disposition of criminal charges.

## A.   LEGAL FRAMEWORK APPLICABLE TO PRETRIAL SEIZURE OF POTENTIALLY FORFEITABLE PROPERTY

The Supreme Court has long recognized the "strong governmental interest in obtaining full recovery of all forfeitable assets." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 631 (1989). Forfeiture serves important punitive and deterrence functions, and forfeited property often is put to productive use in assisting crime victims and improving communities damaged by criminal behavior. *See Kaley*, 134 S. Ct. at 1094 (citing *Caplin & Drysdale*, 491 U.S. at 629–630).

In this case, the government argues that the Disputed Funds are subject to seizure pursuant to two provisions of the criminal forfeiture statute. First, the government contends that probable cause exists to believe that the disputed assets are subject to forfeiture under 18 U.S.C. § 982(a)(7), which requires the forfeiture of all property "that constitutes or is derived, directly or indirectly, from gross proceeds traceable to" a "Federal health care offense." Gov't Supp. Br. at 4. Alternatively, the government argues that there is probable cause to believe that the Disputed Funds are subject to forfeiture under 18 U.S.C. § 982(a)(1), which requires forfeiture from a defendant convicted of a federal money laundering offense of any property "involved in such offense, or any property traceable to such property." *Id.*

Criminal forfeiture proceedings under these provisions, including pretrial seizure of property subject to forfeiture upon conviction, are governed by 21 U.S.C. § 853, *see* 18 U.S.C. § 982(b)(1), as well as Federal Rule of Criminal Procedure 32.2. Under 21 U.S.C § 853, the government may request a warrant from a federal court authorizing the pretrial seizure of property subject to forfeiture "in the same manner as provided for a search warrant." 21 U.S.C. § 853(f). The court "shall" issue such a warrant upon determining that there is "probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that [other authorized forms of protective orders] may not be sufficient to assure the availability of the property for forfeiture." *Id.*

Once the government has obtained a seizure warrant pursuant to 21 U.S.C. § 853(f), the Federal Rules of Criminal Procedure provide for no further inquiry into the property's forfeitability until disposition of the criminal charges on which the forfeiture is predicated. *See* FED. R. CRIM. P. 32.2(b)(1)(A) (providing for final criminal forfeiture determinations "[a]s soon as practical *after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted*, on any count in an indictment or information regarding which criminal forfeiture is sought.") (emphasis added); *see also Sunrise Acad. v. United States*, 791 F. Supp. 2d 200, 202–03 (D.D.C. 2011) (noting that upon showing that property is forfeitable and in danger of dissipation, "neither Section 853 nor Rule 32.2 provides for any further inquiry into the property's forfeitability until the defendant in an associated criminal proceeding is found or pleads guilty" to the charge for which criminal forfeiture is sought). At a post-trial or post-plea hearing, "[i]f the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." FED. R. CRIM. P. 32.2(b)(1)(A).

Notwithstanding the post-conviction process provided by Rule 32.2, the Supreme Court has made clear that pretrial seizure, pursuant to 21 U.S.C. § 853(f), necessarily requires two probable cause findings: (1) that "the defendant has committed an offense permitting forfeiture;" and (2) that "the property at issue has the requisite connection to that crime." *Kaley*, 134 S.Ct. at 1095 (citing 21 U.S.C. § 853(a)); *see also United States v. Monsanto*, 491 U.S. 600, 615 (1989) (upholding constitutionality of pretrial seizure of criminal defendant's assets so long as it is "based on a finding of probable cause to believe that the assets are forfeitable"). Probable cause is an "objective standard requiring an analysis of the totality of the circumstances." *United States v. Jackson*, 415 F.3d 88, 91 (D.C. Cir. 2005) (citing authorities). It is "not a high bar," *Kaley*, 134 S.Ct. at 1103, and is instead "synonymous with 'fair probability,'" *Jackson*, 415 F.3d at 91 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

In *Kaley*, the Supreme Court partially resolved the question left open in *Monsanto* "'whether the Due Process Clause requires a hearing' to establish either or both . . . aspects of forfeitability." 134 S. Ct. at 1095 (quoting *Monsanto*, 491 U.S. at 615 n.10). Specifically, the *Kaley* Court held that an indicted defendant has no constitutional right to contest in a pretrial hearing a grand jury determination of probable cause to believe that a crime has been committed because, on this issue, "[t]he grand jury gets the final word." *Id.* at 1105. Consequently, a grand jury indictment forecloses any further hearing on the first prong required for pretrial seizure of assets, namely, whether probable cause supports the charges. *Id.*

The *Kaley* Court expressly reserved judgment as to the availability of pretrial review of the second prong, that "the property at issue has the requisite connection to that crime." *Id.* at 1095 & n.3 (noting that lower courts generally have provided pretrial hearings to assess the traceability of seized property, but declining to "opine on the matter"). The Court, however,

emphasized an important distinction between the grand jury's probable cause finding regarding guilt versus traceability, noting that "the tracing of assets is a technical matter far removed from the grand jury's core competence and traditional function." *Id.* at 1099 n.9. Moreover, the *Kaley* Court pointed out that "a judge's finding that assets are not traceable to the crime charged in no way casts doubt on the prosecution itself" and, consequently, such a judicial "determination does not similarly undermine the grand jury or create internal contradictions within the criminal justice system," as would the second-guessing of a grand jury's finding on the first prong. *Id.*

Notwithstanding the policy distinctions articulated by the Supreme Court that might dictate different treatment of pretrial review of a grand jury's finding of probable cause of guilt and of potential forfeitability, the *Kaley* Court provides no clear guidance as to a defendant's entitlement to a pretrial hearing on the traceability of seized property, particularly where the defendant has not invoked his right to counsel.

The *Kaley* Court's holding abrogated a portion of the D.C. Circuit's prior ruling in *United States v. E-Gold, Ltd.*, 521 F.3d 411, 421 (D.C. Cir. 2008), that indicted defendants have a constitutional due process right to a post-asset deprivation, pre-trial hearing addressing the existence of probable cause as to the predicate criminal offense, "at least where access to the assets is necessary for an effective exercise of the Sixth Amendment right to counsel." The *Kaley* Court, however, did not address the portion of the *E-Gold* Court's ruling that, when the Sixth Amendment right to counsel is implicated, a pre-trial hearing on the forfeitability of the specified property is required under the three-pronged test set out in *Mathews v. Eldridge* for "determining the due process rights of citizens who were subjected to the seizure of their property or other constitutionally protected interests." *Id.* at 416–19. Thus, this aspect of the *E-Gold* holding remains binding on this Court. Notably, however, the D.C. Circuit expressly

declined to consider the issue presented in this case: whether a pretrial hearing is constitutionally required to test the sufficiency of probable cause for the charged offense or forfeitability when no Sixth Amendment right is at stake. *Id.* at 421 ("We need not determine, nor do we determine, whether the due process rights of the defendants compel such a hearing when the assets are not necessary to obtaining counsel of choice.").

The D.C. Circuit has had no occasion to revisit its holding in *E-Gold* in light of *Kaley* and has not otherwise addressed the availability of a pretrial probable cause hearing on, or judicial review of, the forfeitability of seized property, absent a Sixth Amendment claim. *See* Gov't Opp'n at 5–6. Hence, both parties acknowledge that "the D.C. Circuit has never held that due process requires a pretrial hearing" in this circumstance. Gov't Opp'n at 6; *see also* Def.'s Mot. at 9 n.1 (acknowledging that *E-Gold* "was decided in the context of a Sixth Amendment claim").

In short, the defendant's motion in this case squarely raises an issue left unresolved by the Supreme Court in both the *Kaley* and *Monsanto* opinions, and by the D.C. Circuit in *E-Gold,* regarding an indicted defendant's entitlement to pre-trial judicial review of the forfeitability, or traceability, of assets seized pursuant to a probable cause warrant—which probable cause finding in this case is bolstered by a grand jury finding—when no Sixth Amendment right to counsel is implicated.

Set against this legal backdrop, the Court now turns to the government's arguments in opposition to the defendant's motion.

### B.    DEFENDANT IS NOT LIMITED TO POST-TRIAL RELIEF UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 32.2

The government urges the Court to deny any pretrial review of the potential forfeitability of the Disputed Funds because the "procedures in Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853(n) protect the defendant's due process interests under the Fifth Amendment."

Gov't Opp'n at 3. As support for this proposition, the government relies on *Sunrise Academy v. United States*, 791 F. Supp. 2d 200 (D.D.C. 2011), *id.* at 8–9, but this case is easily distinguishable for at least three reasons. First, the Court in *Sunrise* considered the availability of pretrial proceedings to test the forfeitability of seized assets afforded to *third parties*, rather than, as here, an indicted defendant. *Sunrise Acad.*, 791 F. Supp. 2d at 204–05. Indeed, when denying the requested pretrial relief, the Court contrasted the interests of such third parties with the interests of indicted defendants, explaining that the defendant's "constitutional right to a speedy criminal trial . . . would be endangered if third-party claimants to seized property were generally permitted to demand the adjudication of their property interests before the government could turn its attention to prosecuting a criminal trial." *Id.* at 206–07. The Court further noted that while the government's interest in guarding the details of its case may be "outweighed by a criminal defendant's interest in obtaining the counsel of his or her choice, the result is not the same when those governmental interests are weighed only against petitioners' interest in gaining access to seized funds a few months earlier than would otherwise be the case." *Id.* at 207. Where a third parties' interests in seized assets are at stake, the Court concluded that "the interests of the government, the public, and the criminal defendant in a fair and orderly trial on the merits of the criminal indictment must take precedence over the petitioners' desire for earlier adjudication of their claims." *Id.*

Second, the *Sunrise* Court emphasized that the third-party petitioners presented "no evidence whatsoever" demonstrating their immediate need for the seized funds and, consequently, the Court found "no reason to believe that [they] will be significantly damaged if adjudication of their claims is postponed pending a post-trial ancillary proceeding." *Id.* at 206. By contrast, the defendant here has presented evidence of both his near-term financial

obligations and his apparent inability to meet those obligations without release of the seized assets. Def.'s Mot. at 10–11, Ex. 2–4. Finally, the *Sunrise* Court did not foreclose entirely the availability of pre-trial review for third-party claimants, and dismissed the petitioners' request without prejudice, noting that the court's holding was "based on the premise that [the defendant's] trial will take place soon; a lengthy postponement of that trial might possibly alter the calculus." *Sunrise Acad.*, 791 F. Supp. 2d at 207.

In sum, the *Sunrise* Court did not, and had no reason to, opine about the issue raised here whether an indicted defendant has a due process right to pretrial review of the traceability of assets seized pursuant to probable cause warrants and subject to a grand jury finding of probable cause of forfeitability, when those assets are needed for household support.[5] The government acknowledges this fact but asserts that "[i]f third parties are not entitled to a hearing in advance of a defendant's criminal trial, there is no basis to conclude that indicted defendants are entitled to one." Gov't Opp'n at 9. This point misses the careful distinction the *Sunrise* Court drew between third parties and the additional rights implicated by an indictment against a defendant. *Sunrise Acad.*, 791 F. Supp. 2d at 207. Unlike a third party, an indicted defendant is cloaked with certain constitutional and statutory rights, including the Sixth Amendment right to counsel of his choice, which rights the defendant may feel pressured to relinquish as a result of the pretrial deprivation of funds and other property. This additional pressure on an indicted defendant is of particular concern since a probable cause finding in a seizure warrant or by a

_____

[5] The government correctly notes that the defendant will be in the position of a third party challenging the forfeiture of specific property if his spouse, Florence Bikundi, is convicted on Counts Thirteen and Fourteen, for which she is the only charged defendant, Gov't Opp'n at 7, or if he is acquitted on Counts One, Two or Fifteen, "but another defendant is found guilty of those counts and the Government establishes the requisite nexus," *id.* at n.5. As a third party, the defendant will be able to employ the procedures set out in 21 U.S.C. § 853(n) and Rule 32.2(c), which govern a third party's ability to challenge the forfeiture of specific property. *See* 21 U.S.C. § 853(k) (barring third parties from intervening in a trial involving forfeiture or adjudicating their "alleged interest" in property subject to forfeiture in an indictment except under section 853(n)); *Sunrise Acad.*, 791 F. Supp. 2d at 204.

grand jury is *ex parte*, increasing the risk of an erroneous finding of probable cause about forfeitability, when the burden of establishing such probable cause indisputably rests with the government. *See Kaley*, 134 S.Ct. at 1103 (acknowledging "that the adversarial process leads to better, more accurate decision-making" but stating that "in this context—when the legal standard is merely probable cause and the grand jury has already made that finding—both our precedents and other courts' experience indicate that a full-dress hearing will provide little benefit"); *id*. at 1113 ("It takes little imagination to see that seizures based entirely on *ex parte* proceedings create a heightened risk of error. Common sense tells us that secret decisions based on only one side of the story will prove inaccurate more often than those made after hearing from both sides.") (C.J. Roberts, dissenting).

Consequently, the Court is not persuaded that Rule 32.2 precludes an indicted defendant from invoking his due process rights before trial to test the sufficiency of probable cause for the forfeitability of seized property. Instead, as the D.C. Circuit instructed in *E-Gold*, "[i]n ascertaining the requirements of the due process clause in affording a hearing to those whose assets are the subject of seizure," the Court must "look first to the Supreme Court's declarations in *Mathews v. Eldridge*." *E-Gold*, 521 F.3d at 415 (internal citation omitted).

## C. AVAILABILITY OF PRETRIAL REVIEW REGARDING TRACEABILITY OF SEIZED PROPERTY

The government contends that, in this case, the *Mathews* factors "tip decidedly against the relief sought in the defendant's motion." Gov't Opp'n at 10. At the outset, this position by the government in this case appears to be inconsistent with the government's position before the Supreme Court in *Kaley*. The majority in *Kaley* noted that "the Government agreed that a defendant has a constitutional right to a hearing on that question" of "whether probable cause exists to believe that the assets in dispute are traceable or otherwise sufficiently related to the

crime charged in the indictment," although the Court reserved judgment on this issue.  *Kaley*, 134

S. Ct. at 1095 & n.3.  The government's oral concession also prompted comment from Chief

Justice Roberts, who stated, in dissent, that "[t]he Solicitor General concedes—and *all* Courts of

Appeals to have considered the issue have held—that 'defendants are entitled to show that the

assets that are restrained are not actually the proceeds of the charged criminal offense'; that is,

that the second prong of the required showing is not satisfied."  *Id.* at 1108 (internal citation

omitted).

      While *Kaley* addressed the availability of pretrial probable cause review when the

defendant asserts a Sixth Amendment claim, the government's concession before the Supreme

Court does not appear to be so limited.  The relevant portion of the transcript follows:

> JUSTICE KENNEDY: Do you concede that there must be a traceability hearing?
> [The Government]: If the defendant seeks one, yes. And there was the opportunity
> in this case for a hearing and the defendants –
> JUSTICE KENNEDY: *I mean, in the general run case*, so you agree that due
> process does require a traceability hearing?
> [The Government]: *Yes. The defendants are entitled to show that the assets that
> are restrained are not actually the proceeds of the charged criminal offense or
> another way* --
> JUSTICE KENNEDY: And the defendants have the burden of proof in that
> hearing?
> [The Government]: That would be up to this Court's decision.
> JUSTICE KENNEDY: What- what is your view as to what the Constitution
> requires in that respect?
> [The Government]: I'd be happy to have the defendants bear the burden of proof,
> but I think the courts, typically, have placed the burden of proof on the
> government to show traceability, and the government, therefore, presents limited
> evidence, but it's all against the background of the crime not being called into
> question.

Transcript of Oral Argument at 45–46, *Kaley v. United States*, 134 S. Ct. 1090 (2014) (No. 12-

464) (emphasis added).  Nevertheless, in its opposition to the instant motion, the government

ignores this concession before the Supreme Court, *see generally* Gov't Opp'n; Gov't Supp. Br.,

and offers no explanation for what appears to be the government's inconsistent position in this case.

Despite the concession by the government at oral argument in *Kaley*, given the lack of clear guidance on this issue, the Court turns to the factors set out in *Mathews v. Eldridge* to determine whether a due process hearing is required. *In re Seizure of Approximately $12,116,153.16 & Accrued Interest in U.S. Currency*, 903 F. Supp. 2d 19, 32 (D.D.C. 2012) ("To determine whether due process requires a hearing in a particular case, a court must examine the factors set forth in *Mathews v. Eldridge*.") (citing *E–Gold*, 521 F.3d at 415). These factors, as articulated by the *Kaley* Court, require a court to weigh "(1) the burdens that a requested procedure would impose on the Government against (2) the private interest at stake, as viewed alongside (3) the risk of an erroneous deprivation of that interest without the procedure and the probable value, if any, of the additional procedural safeguard." *Kaley*, 134 S. Ct. at 1100 (quoting *Mathews*, 424 U.S. at 335) (internal quotations and alterations omitted). While the Court agrees with the government that the *Mathews* factors disfavor the defendant's "request for a pretrial evidentiary hearing," Def.'s Mot. at 1 (capitalization omitted), the Court disagrees that every "procedure" allowing judicial review of the forfeitability of the Disputed Funds is barred given the particular facts of this case.[6]

---

[6] The government also contends that the requisite findings of probable cause underlying the seizure warrants are sufficient to bar a pretrial hearing on traceability, essentially importing the conclusive nature of the grand jury finding on the first prong and applying it to the second prong, even though the *Kaley* Court declined to so hold. Gov't Opp. at 16. In support of its opposition, the government relies on two out-of-circuit cases interpreting *Kaley* not to require a pretrial hearing to contest the traceability of property seized under the federal *civil* forfeiture statute pursuant to magistrate judge warrants. *Id.* at 16 (citing *United States v. Any and all Funds on Deposit in Account Number 0139874788, at Regions Bank, Held in the Name of Efans Trading Corp.*, 2015 WL 247391, at *14 (S.D.N.Y. Jan. 20, 2015) and *In re Premises Known and Described as 100 Sweenydale Avenue, Bayshore, N.Y.*, 2015 WL 3607572, at *9-11 (E.D.N.Y. June 6, 2015)). These cases do not address the availability of a pretrial hearing regarding the forfeitability of property seized under a *criminal* forfeiture statute and are therefore inapposite. Moreover, neither of these cases addressed the peculiar facts presented here, where the challenge to probable cause stems from the supporting affidavits themselves.

With respect to the first factor, regarding the burdens on the government of the requested pretrial evidentiary hearing, the government quotes extensively from the *Kaley* Court's litany of adverse consequences, Gov't Opp'n at 10–11, including (1) "consum[ing] significant prosecutorial time and resources," *Kaley*, 134 S. Ct. at 1101; (2) "rehears[ing] the case's merits, including the Government's theory and supporting evidence," *id.*; (3) possible "litigat[ion over] a range of ancillary questions relating to the conduct of the hearing itself," *id.*; and (4) "more seriously," "undermin[ing] the Government's ability either to obtain a conviction or to preserve forfeitable property" by forcing the government to choose whether "to disclose all its witnesses and other evidence" and "case and strategy well before" such disclosure would otherwise be required, *id.* Yet, the *Kaley* Court's list relates to a pretrial hearing on the *first* prong, requiring a showing of probable cause for the charged offenses, not a pretrial hearing on the *second* prong regarding forfeitability. A hearing on the *second* prong is not as likely to trigger "a pre-trial mini-trial (or maybe a pre-trial not-so-mini-trial)" that the *Kaley* Court sought to avoid in holding that grand jury determination of probable cause of guilt—the first prong—"is conclusive." *Id*. at 1101, 1099. Moreover, the government makes no effort to detail the nature of the burden it would face to show the traceability of the Disputed Funds to the charged offenses. *See generally* Gov't Opp'n; Gov't Supp. Br.

Nevertheless, the Court appreciates that the requested pretrial hearing would necessarily impose some burden of time and resources on the government to preview how allegedly fraudulently obtained funds were tracked to the four bank accounts at issue.[7] Under the *Mathews*

---

[7] The government expresses concern that, if released, the Disputed Funds "will be dissipated beyond the Government's ability to recover even if the Government ultimately prevails during the forfeiture phase of the trial." Gov't Opp'n at 11. This concern puts the proverbial "cart before the horse." The government bears the burden in the first instance to show both probable cause prongs, including that the Disputed Funds are traceable to the charged crimes. Only upon meeting those two probable cause prerequisites is the government entitled to pretrial seizure "to assure the availability of the property for forfeiture." 21 U.S.C. 853(f).

test, this burden must be weighed against the defendant's interests "alongside" the risk of erroneous deprivation without some procedural safeguard. *Kaley*, 134 S. Ct. at 1100 (quoting *Mathews*, 424 U.S. at 335). The government contends that the defendant's need for funds to pay for household expenses is "to maintain his pre-indictment lifestyle, not for basic necessities." Gov't Opp'n at 12 n. 6. Through exhibits and representations at the July 31, 2015 hearing, the defendant has presented evidence that he is unable to pay his utility bills, such that he must rely on borrowed funds to do so, and property taxes, such that his home is subject to a tax sale. *See* Def. Mot. at 10–11, Ex. 1–4. Defendant likewise has presented evidence that he is unable to pay for his children's preschool education and has recently lost private insurance coverage. *Id.* The defendant has not asserted that he cannot afford the counsel of his choice, but he has demonstrated a substantial need for the funds at issue to provide for household necessities. *Id.* The Court is not persuaded that the defendant's showing is insufficient to warrant some procedural safeguard to reduce "the risk of erroneous deprivation." *Kaley*, 134 S. Ct at 1100.

This risk is particularly acute in this case in light of the express gaps in the First Affidavit regarding the traceability of the Disputed Assets. Indeed, the defendant's argument is straightforward: the First Affidavit supporting the seizure warrant for the four domestic bank accounts at issue expressly disclaimed that the Disputed Funds are traceable to the charged criminal activity. Thus, the defendant has done more than merely claim that certain assets held in the seized bank accounts are not traceable to the charged criminal activity but, instead, relies on the statements set out in the First Affidavit itself that undermine the government's showing that the Disputed Funds were subject to criminal forfeiture. Evaluation of this challenge to the forfeitability of the Disputed Funds does not require any additional evidentiary materials beyond those that the government has already been given an opportunity to provide.

On balance, the Court concludes that while the defendant's requested procedure of a "pretrial evidentiary hearing," is not warranted, an alternative procedural safeguard of pretrial judicial review of the First Affidavit itself is. Indeed, it is a "normal process" for a court to review the legal sufficiency of an affidavit to support probable cause without an evidentiary hearing. *United States v. Matthews*, 753 F.3d 1321, 1326–1327 (D.C. Cir. 2014); *see also Massachusetts v. Upton*, 466 U.S. 727, 728 (1984) (per curiam) ("[T]he task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant."); *Gates*, 462 U.S. at 236–39 (while clarifying that "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review," and should give "great deference" to a magistrate's determination of probable cause, cautioning that "courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued").[8]

Having determined that the defendant is entitled to pretrial judicial review of the challenged seizure warrants, the Court next turns to evaluation of the legal sufficiency of the

---

[8] Other circuits considering an indicted defendant's challenge to the second forfeitability prong have held that pretrial review may be warranted even where the defendant asserts no Sixth Amendment claim. For example, in *U.S. v. Jones*, 160 F. 3d 641, 646 (10th Cir. 1998), the Tenth Circuit concluded that "an adversarial hearing that occurs shortly after freezing assets would serve to diminish the risk of an erroneous deprivation at a meaningful time." Although the defendant in *Jones* claimed that the challenged seizure implicated his Sixth Amendment right to counsel, the court explained that "[a] restraining order that prevents a defendant from supporting herself and her family pending and during trial would likely work an injustice with constitutional implications." *Id.* at 646 (citing *United States v. Thier*, 801 F.2d 1463, 1477 (5th Cir. 1986)). Thus, under *Jones*, pretrial review is required when the defendant can (1) "demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel and provide for herself and her family;" and (2) "make a prima facie showing of the bona fide reason to believe the grand jury erred in determining that the restrained asset" is potential subject to criminal forfeiture. *Id.* at 647. The Sixth Circuit has adopted the *Jones* test, likewise emphasizing the value of pretrial review even absent a Sixth Amendment claim. *See United States v. Jamieson*, 427 F.3d 394, 407 (6th Cir. 2005) ("We have no quarrel with the district court's decision to apply *Jones*, recognizing as we do that that a fundamental requirement of due process is the opportunity to be heard, and that the opportunity to be heard is non-existent when a district court grants a restraining order based only on the indictment.") (internal quotation and citation omitted).

probable cause showing in the First Affidavit for seizure of the four different categories of Disputed Funds.

### D.     PROPERTY WITH NO ALLEGED CONNECTION TO THE CHARGED OFFENSES MUST BE RELEASED

Through the instant motion, the defendant challenges the legal sufficiency of the government's affidavits supporting the seizure and continued restraint of the Disputed Funds. As noted, the defendant argues that the government's affidavits make no allegation with respect to the traceability of the following Disputed Funds and, rather, explicitly distinguishes between funds traceable to alleged criminal conduct and these funds, which the defendant seeks to have released: (1) $62,300.00 in cash deposits; (2) $10,000.00 in cashier's check deposits; (3) $14,250.00 in deposits from checks issued by unidentified third parties; and (4) $15,615.00 in proceeds from the sale on an unspecified date of an unidentified vehicle. Def.'s Mot. at 1, 3–5.

The government does not attempt to address the apparent gaps in the challenged affidavits regarding the traceability of the Disputed Funds with an additional factual proffer but instead contends in its supplemental briefing that the continued restraint of the Disputed Funds is supported under two alternative theories. First, the government contends that there is probable cause to find that the Disputed Funds, while not *directly* derived from the charged offenses, were in fact *indirectly* derived from the defendant's alleged criminal activity. Gov't Supp. Br. at 5. Under this theory, the government contends that the affidavits present circumstantial evidence that the Disputed Funds are forfeitable under 18 U.S.C. § 982(a)(7) as property "derived, directly or indirectly, from gross proceeds traceable to the commission of" a federal health care offense. *Id.*

To support this theory, the government relies on two out-of-circuit cases to suggest that circumstantial evidence that the defendant and his wife had no "verifiable income" other than

illegal proceeds during the relevant period is sufficient to find probable cause that the Disputed Funds are either directly or indirectly traceable to criminal activity. *Id.* at 5. Specifically, the government cites *United States v. Green*, 516 F. App'x 113, 135 (3d Cir. 2013) *cert. denied*, 134 S. Ct. 2818 (2014), and *United States v. Hailey*, 887 F. Supp. 2d 649 (D. Md. 2012), for the proposition that circumstantial evidence of the defendant's lack of legitimate income raises an inference that all property in the defendant's possession during the period of alleged criminal conduct derived either directly or indirectly from that conduct. Gov't Supp. Br. at 5. Both affidavits allege that the Bikundis' only known source of income during the period in which the accounts at issue were open derived from allegedly fraudulently obtained payments from the District of Columbia Medicaid Program. First Aff. ¶ 88; Second Aff. ¶ 6. Thus, the government contends that circumstantial evidence suggests that all of the funds held in the seized accounts derived directly or indirectly from the alleged fraud.

Critically, however, in both *Green* and *Hailey*, the court's probable cause finding was not based solely upon circumstantial evidence of the defendant's lack of legitimate income, but rested upon additional evidence supporting the government's proffered theory of traceability. *See Green*, 516 F. App'x at 135 (describing trial testimony provided by a Secret Service agent that the purchase paperwork for the defendant's forfeited vehicle listed an illegible seller and bore the same notary stamp the defendant used to commit the charged fraud); *Hailey*, 887 F. Supp. 2d at 653 ("The Court may consider the timing of the defendants' acquisition of the property relative to his commission of the offense, his lack of other legitimate sources of income, and any steps taken to conceal his connection to the asset" in making a forfeiture determination).[9] In effect, the government reads *Green* and *Hailey* to hold that it is the

---

[9] Moreover, both of these cases involve post-trial forfeiture proceedings and do not address the differing implications of pretrial seizure.

*defendant's* burden to demonstrate that the Disputed Funds were derived from a legitimate source. To the contrary, however, both *Green* and *Hailey* confirm that while evidence of the defendant's lack of legitimate income may raise an inference of traceability, this inference alone is insufficient to establish probable cause that the Disputed Funds are subject to criminal forfeiture.

For the Disputed Funds comprised of cash deposits and cashier's checks deposits, the government has presented additional evidence to supplement its suggested inference and support a probable cause finding regarding the funds' traceability to the charged fraud. The First Affidavit alleges that approximately $7.2 million in cashier's checks were purchased, and $900,000 in cash was withdrawn, from accounts containing funds traceable to or derived from Medicaid payments. First Aff. ¶¶ 89, 91. According to the government, there is a "fair probability" that the "cash and cashier's checks deposited into the accounts at issue are traceable to Medicaid payments" and that while not directly traceable to Medicaid payments in fact represent proceeds derived indirectly from the charged fraud. Gov't Supp. Br. at 5–6. Indeed, the First Affidavit states that fraudulently obtained Medicaid payments were deposited into "intake" accounts before being transferred to over 50 accounts controlled by the defendant and/or co-defendant Florence Bikundi in an alleged effort to disguise the funds illicit source. First Aff. ¶ 84.

Certainly, the defendant has not disputed the government's allegations that the source of the cash and cashier's check deposits that are part of the Disputed Funds originated from Medicaid payments, or identified an alternative source for these funds, either by producing tax returns or other documentation, leading to an inference that these funds were derived from the charged criminal activity. Gov't Supp. Br. at 5. The government has supported this inference

that these Disputed Funds were derived, at least indirectly, from the charged criminal activity with allegations that these funds were originally held in accounts that received proceeds of the alleged fraud. First Aff. ¶¶ 89, 91. As such, the government has presented sufficient evidence to support a finding of probable cause that the disputed cash and cashier's check deposits derived at least indirectly from the charged fraud offenses.

By contrast, the government has pointed to no evidence to support an inference that the third-party checks and vehicle sale proceeds are traceable to the charged offense. On the contrary, the government identifies no allegation in the First or Second Affidavits explaining the alleged connection or link between the third-party check deposits and sale of a vehicle and the charged offenses. *See* First Aff. ¶¶ 236, 238, 240. The affidavits are silent with respect to the most basic information about the source of these funds, proffering no evidence as to the identities of the third parties issuing the third-party checks or their alleged connection to the charged offenses. Similarly, as to the seized proceeds from the sale of a vehicle, the affidavits provide no information regarding the make and model of the vehicle, or the date on which the vehicle was acquired or sold by the defendant. Lacking this basic information, and in light of the fact that the government indeed disclaimed that these funds were derived from Medicaid payments, the government has failed to meet its burden of presenting sufficient evidence to find probable cause that these funds derived directly or indirectly from the charged fraud. *Accord United States v. Sharaf,* No. CR 15-MJ-139 (GMH), 2015 WL 4238784, at *2 (D.D.C. July 13, 2015) (noting that the government would "clearly fail" to establish probable cause under the criminal forfeiture statute as to the traceability of cars purchased before any charged criminal conduct). Thus, the continued restraint of funds tied to third-party deposits and the sale of an unidentified vehicle cannot be supported under the government's theory of indirect traceability.

Under its second theory, the government asserts that the Disputed Funds are subject to forfeiture as property "involved in" a money laundering offense under 18 U.S.C. § 1956.  Gov't Supp. Br. at 6–8.  Again relying primarily on non-binding authority, the government argues that otherwise legitimate funds comingled with illegitimate funds in an effort to conceal illegal proceeds are subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1).  *Id.* at 7–8.  Describing the defendant's alleged money laundering activities, the government contends that there is probable cause to believe that all Disputed Funds held in the four accounts at issue are subject to criminal forfeiture.  *Id.* at 8.

Construing the federal money laundering statute, the D.C. Circuit has made clear that otherwise untainted money may become "involved" in a money laundering offense where those funds are comingled with illicit proceeds.  *United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1351–55 (D.C. Cir. 2002).  The money laundering statute generally prohibits engaging in a financial transaction that "involves the proceeds" of specified illegal activities in order to facilitate those activities.  18 U.S.C. § 1956(a)(1).  In *Braxtonbrown-Smith*, the D.C. Circuit considered whether this statute required the government to demonstrate that funds withdrawn from a commingled bank account were traceable to illicit activity to prove that the transaction "involve[d] the proceeds" of illegal activity.  Rejecting such a "complete tracing" requirement, the Court cited favorably the Seventh Circuit's observation that "money need not be derived from crime to be 'involved' in it . . . ." 278 F.3d. at 1353 (quoting *United States v. $448,342.85*, 969 F.2d 474, 476 (7th Cir. 1992)).  The D.C. Circuit further explained that "[a]lthough 'involve' might also be read to mean that the individual transaction must include illegal proceeds in some amount, no circuit to consider this issue has held that" funds withdrawn from a comingled account must be traced directly to illegal proceeds to support a conviction for money laundering.

*Id.* The Court emphasized, "it is precisely the commingling of tainted funds with legitimate money that facilitates the laundering and enables it to continue." *Id.* (quoting *United States v. Tencer*, 107 F.3d 1120, 1135 (5th Cir. 1997)) (internal alternation omitted).

In *Braxtonbrown-Smith*, the D.C. Circuit interpreted the nearly identical phrase "involved in" as used in the money laundering statute that is also used in the criminal forfeiture statute, 18 U.S.C. § 982(a)(1), which is applicable to money laundering offenses. Although the D.C. Circuit has not addressed the question directly, *Braxtonbrown-Smith* provides support for the conclusion that legitimate funds that are comingled with illicit funds may be subject to criminal forfeiture under 18 U.S.C. § 982(a)(1). This conclusion is consistent with holdings reached in other circuits that otherwise legitimate funds comingled with illicit proceeds are subject to criminal forfeiture, where the government produces evidence that the legitimate funds were used to conceal the source of illicit proceeds. *See United States v. Coffman*, 574 F. App'x 541, 561 (6th Cir. 2014) *cert. denied sub nom. Milby v. United States*, 135 S. Ct. 1019 (2015) *and* 135 S. Ct. 1568 (2015) ("Commingling is enough to expose the legitimate funds to forfeiture, if the commingling was done for the purpose of concealing the nature or source of the tainted funds (that is, if the commingling was done to facilitate money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i))." ) (internal quotation and citation omitted); *United States v. Puche*, 350 F.3d 1137, 1153–54 (11th Cir. 2003) (allowing for forfeiture of otherwise untainted funds where the government produced evidence that funds, both legitimate and illegitimate, were "rapidly moved into bank accounts in order to conceal the nature and source of the [illegal] proceeds"); *United States v. McGauley*, 279 F.3d 62, 75–77 (1st Cir. 2002); *United States v. Bornfield*, 145 F.3d 1123, 1135 (10th Cir. 1998) ("[F]orfeiture of [commingled] funds . . . is proper when the government demonstrates that the defendant pooled the funds to facilitate, i.e., disguise the

nature and source of, his scheme.") (citing *Tencer*, 107 F.3d at 1134–35). This "facilitation theory is limited by the requirement that the government demonstrate that a defendant pooled the funds for the purpose of disguising the nature and source of his scheme, rather than the illegitimate funds having merely an incidental or fortuitous connection to illegal activity." *United States v. Stanford*, No. CRIM.A. 12-146 08, 2014 WL 7013987, at *4 (W.D. La. Dec. 12, 2014).

Here, the government contends that the seizure affidavits contain sufficient allegations to support such a facilitation theory for pretrial restraint of the Disputed Funds. The First Affidavit describes the process of repeatedly shifting funds from an initial "intake" account through numerous levels of recipient accounts as "layering." First Aff. ¶ 85. "Layering involves a financial transaction or series of financial transactions that separate unlawfully obtained proceeds from their source and, in the process, conceal the illegal nature of the proceeds and complicate an audit trail." *Id.* Thus, the government contends that the transfer of funds among dozens of accounts controlled by the defendants was used to conceal the source of their illicitly obtained Medicaid payments. *Id.* These allegations under the government's second theory are adequate to show that the Disputed Funds consisting of cash and cashier's checks are "involved in" the money laundering offenses, and bolster the Court's finding that the probable cause finding on the forfeitability of these funds is sufficient for pretrial seizure.

While the government has sufficiently alleged that the Disputed Funds consisting of cash and cashier's checks were withdrawn from accounts containing Medicaid proceeds and subsequently deposited in the one of the four domestic accounts at issue here, the government has pointed to no allegation to suggest that the disputed third-party deposits and proceeds from the sale of an unidentified vehicle were used in "layering" or in any other way to facilitate the

charged money laundering offenses. Thus, just as the government has not met its burden of establishing probable cause that these particular Disputed Funds were derived directly or indirectly from the charged Medicaid fraud, the government's allegations do not raise a fair probability that funds tied to third-party deposits or the alleged vehicle sale were used to facilitate the defendant's alleged illegal money laundering activity.

*   *   *

The government's affidavits show the requisite connection between some of the Disputed Funds but not others to the offenses charged in the Superseding Indictment. Specifically, the government has presented sufficient allegations showing that the disputed cash deposits and cashier's checks, totaling $72,300.00, are traceable and involved in the charged offenses to support the forfeitability of these funds and their pretrial seizure. The government has failed, however, to show probable cause for the forfeitability of the disputed funds derived from third-party deposits and the sale of an unidentified vehicle, totaling $29,865.00, which the seizure affidavits disclaim were traceable to the allegedly fraudulently obtained Medicaid payments. Thus, the defendant's motion to Partially Vacate the Seizure Warrant is granted in part and denied in part.

## III.   CONCLUSION

For the reasons stated above, the defendant's Request for a Pretrial Evidentiary Hearing is DENIED, and the defendant's motion to Partially Vacate the Seizure Warrant and to Permit Use of a Portion of Funds from Seized Bank Accounts for Purposes of Household Necessities is GRANTED in part and DENIED in part. The defendant's motion is (1) granted with respect to the seizure of funds attributed to third-party deposits and the sale of a vehicle owned by the defendant; and (2) denied with respect to the funds attributed to deposits of cash and cashier's

checks held in the seized accounts.  The government is therefore ordered to release a total of $29,365.00 to the defendant.

An appropriate Order accompanies this memorandum opinion.


Date: August 28, 2015


_____
BERYL A. HOWELL
United States District Judge