## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> FLORENCE BIKUNDI, <br> MICHAEL D. BIKUNDI, SR., <br><br> Defendants. | Criminal Case No. 14-cr-030 (BAH) <br> Judge Beryl A. Howell |

## MEMORANDUM OPINION

The defendants Florence Bikundi and her husband, Michael D. Bikundi, Sr., are charged in a multi-count Superseding Indictment for allegedly conspiring to defraud and defrauding the District of Columbia Medicaid Program. Their trial is scheduled to begin on October 13, 2015. A motions hearing and pretrial conference were held in this matter on July 31, 2015, and September 18, 2015, respectively, during which oral argument was heard on pretrial motions and a number of those motions were resolved for the reasons stated on the record. *See* Minute Order (July 31, 2015); Minute Order (Sept. 18, 2015).[1] Pending before the Court are two remaining

---

[1] Specifically, at the motions hearing, the Court granted the United States' Request for Defendants to Provide Notice Whether They Intend to Seek Jury Determination on Forfeitability of Specific Property, ECF No. 213, and denied the following motions: (1) defendant Michael Bikundi's First Motion to Sever His Case From Florence Bikundi Based Upon Disparity of Evidence, ECF No. 155; (2) defendant Michael Bikundi's Motion to Sever Counts in the Indictment, ECF No. 208; (3) defendant Florence Bikundi's Motion to Dismiss Indictment and/or Pretrial Release for Violation of her Statutory and Constitutional Rights to Speedy Trial, ECF No. 211; (4) defendant Florence Bikundi's Motion for Immediate Production of *Brady* Material, ECF No. 201; and (5) defendant Florence Bikundi's Motion to Strike Surplusage or in the Alternative to Preclude the Government From Introducing Evidence at Trial, ECF No. 209, without prejudice to renew. The following motions were granted in part and denied in part: (1) the United States' Motion to Admit Other Crimes Evidence Pursuant to Federal Rule of Evidence 404(b), ECF No. 206, without prejudice, to allow (a) evidence of the defendants' hiring and continued use of undocumented workers and (b) evidence of defendant Michael Bikundi's instructions to codefendant Elvis Atabe not to disclose inculpatory information to the Grand Jury, and to bar evidence of defendant Florence Bikundi's March 8, 2000 Naturalization Application; and (2) the United States' Motion *In Limine* for Willful Blindness Instruction to Counts Thirteen & Fourteen & Permission for the Government to Refer to Willful Blindness in its Opening Statement When Discussing These Counts, ECF No. 205, to allow the government to refer to a willful blindness theory in opening statement at trial, and to bar, as premature, a willful blindness jury instruction. *See* Minute Order (July 31, 2015). The Court reserved ruling on defendant Michael Bikundi's Motion to Partially Vacate the Seizure Warrant & to

1

pretrial evidentiary motions:  (1) the United States' Motion *in Limine* to Admit Certain Exhibits

Pursuant to Federal Rule of Evidence 404(b) ("Gov't's Mot."), ECF No. 273; and (2) the

defendant Florence Bikundi's Motion *in Limine* to Exclude Certain Evidence and/or Testimony

("Def.'s Mot."), ECF No. 276.  For the reasons discussed below, the government's motion is

granted and the defendant's motion is granted in part and denied in part.

## I.    BACKGROUND

The Superseding Indictment alleges that defendant Florence Bikundi, a former licensed

practical nurse, *see* Superseding Indictment ¶¶ 36, 38, ECF No. 44, was excluded in or around

April 2000 by the United States Department of Health and Human Services Office of Inspector

General from participating in Medicare, Medicaid, and all Federal health care programs, and

thereby "prohibited . . . from submitting or causing the submission of claims to, and receiving

funds from, Federal health care programs such as Medicaid," *id.* ¶ 45.  Despite her exclusion,

however, Florence Bikundi allegedly "was a director, administrator, officer, and primary

owner/stockholder of three [home care agencies]," which, between July 2007 and December

2014, received over $78 million in payments from Medicaid programs.  *Id.* ¶ 20.

One of the home care agencies, Global Healthcare, Inc. ("Global"), *see id.* ¶ 21, was

"registered to do business in the District of Columbia," "licensed in the District of Columbia as a

---

Permit Use of a Portion of Funds From Seized Bank Accounts for Purposes of Household Necessities, & Request for a Pretrial Evidentiary Hearing, ECF No. 149, *see* Minute Order (July 31, 2015), which was subsequently granted in part and denied in part in a written Memorandum Opinion, ECF No. 266, and Order, ECF No. 267.

At the pretrial conference, the Court granted the following motions: (1) the United States' Motion to Permit a Designated Law Enforcement Agent to be Present at Counsel Table During Trial, ECF No. 259, as conceded; (2) the United States' Motion to Forego Certain Redactions in its Filings, ECF No. 260, as conceded; and (3) the United States' Notice of Intent to Use Defendant's Conviction for Identity Theft as Impeachment Evidence, ECF No. 247. The following motions were denied: (1) the United States' Motion *in Limine* to Preclude the Defendants From Arguing That the Government Targeted Family Members & From Commenting on the Status of Co-Defendants Christian Asongcha & Atawan Mundu John, ECF No. 274; (2) the United States' Motion to Forego Redaction to Exhibit, ECF No. 275, with instructions to redact the child's name; and (3) the United States' Motion *in Limine* to Exclude Defendant's Proposed Experts From Trial, ECF No. 277.  *See* Minute Order (Sept. 18, 2015).

home care agency[,] . . . enrolled as a provider in D.C. Medicaid[,]" and "purported to provide personal care services to D.C. Medicaid beneficiaries," *id.* ¶ 29(a). A second home care agency shared the same name, Global Healthcare, Inc. ("Global Maryland"), but was incorporated in Maryland, licensed in Maryland as a "resident service agency," enrolled as a provider in the Maryland Medicaid program, and "purported to provide personal care services to Maryland Medicaid beneficiaries." *Id.* ¶¶ 29(c), 31. A third home care agency, Flo-Diamond, Inc. ("Flo-Diamond") was similarly incorporated in Maryland, licensed in Maryland as a resident service agency, enrolled as a provider in Maryland Medicaid, and "purported to provide personal care services to Maryland Medicaid beneficiaries." *Id.* ¶¶ 30–31. Florence Bikundi's husband and codefendant, Michael Bikundi, "was an executive officer and part owner" of Global. *Id.* ¶ 21.

The defendants are both charged with, from about August 2009 to about February 2014, conspiring to commit health care fraud and committing health care fraud by submitting and causing to be submitted false and fraudulent claims for payment to the D.C. Medicaid program, in violation of 18 U.S.C. §§ 2, 1347, 1349, *see* Superseding Indictment ¶¶ 67–75 (Counts One and Two); conspiring to commit money laundering and committing money laundering to conceal proceeds illegally derived from the health care fraud, in violation of 18 U.S.C. §§ 2, 1956(a)(1)(B)(i), 1956(h), *see* Superseding Indictment ¶¶ 83–89 (Counts Fifteen through Twenty-Two); and engaging in monetary transactions with proceeds illegally derived from the health care fraud, in violation of 18 U.S.C. §§ 2, 1957, *see* Superseding Indictment ¶¶ 90–91 (Counts Twenty-Three through Twenty-Five). Defendant Florence Bikundi is additionally charged with, during the same time period, committing health care fraud by concealing her exclusion from participation in all Federal health care programs and making other false and fraudulent representations to obtain payments from the D.C. Medicaid program, in violation of

18 U.S.C. §§ 2, 1347, and 42 U.S.C. § 1320a-7b(a)(3), *see* Superseding Indictment ¶¶ 78–82 (Counts Thirteen and Fourteen).

At the pretrial conference, following oral argument, the Court reserved ruling on two pretrial motions to give the parties an opportunity for supplemental briefing.  Rough Transcript of Pretrial Conference Hearing (September 18, 2015) ("PTC Tr.") at 56, 87.  Having reviewed the government's supplemental briefing, *see* Gov't's Supplemental Brief Supp. Mot. *in Limine* to Admit Certain Exhibits Pursuant to Federal Rule of Evidence 404(b) ("Gov't's Supp. Br."), ECF No. 291; Gov't's Supplemental Mem. Opp'n Def.'s Motion *in Limine* to Exclude Evidence & Testimony Related to False Statements on Financial Documents ("Gov't's Supp. Opp'n"), ECF No. 292, the government's Motion *in Limine* to Admit Certain Exhibits Pursuant to Federal Rule of Evidence 404(b), ECF No. 273, and the defendant Florence Bikundi's Motion *in Limine* to Admit Exclude Certain Evidence and/or Testimony, ECF No. 276, are now ripe for consideration and are addressed below.

## II.    LEGAL STANDARD

The Supreme Court has recognized that "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *see id*. at 40 n.2 (defining motion *in limine* "in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered").  Indeed, Rule 103(d) of the Federal Rules of Evidence mandates that the court must conduct a jury trial to the extent practicable so that inadmissible evidence is not suggested to the jury by any means.  FED. R. EVID. 103(d).  Pretrial motions *in limine* are an important mechanism to effectuate this goal of insulating the jury from inadmissible evidence

4

and further the purpose of the rules, generally, to administer the proceedings "fairly . . . to the end of ascertaining the truth and securing a just determination." FED. R. EVID. 102; *see Banks v. Vilsack*, 958 F. Supp. 2d 78, 82 (D.D.C. 2013) (citing FED. R. EVID. 103(d) and determining that plaintiff's motion to exclude certain evidence would be decided pretrial "[i]n the interest of conducting an efficient jury trial and preventing the jury from hearing inadmissible evidence"); *Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (noting that motions *in limine* "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury"); 21 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5042, at 965 (2d ed. 2005) (noting that "the motion in limine . . . still remains a favorite method of the writers for satisfying Rule 103(c)"). Moreover, "[a] pre-trial ruling, if possible, may generally be the better practice, for it permits counsel to make the necessary strategic determinations." *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980).

In evaluating the admissibility of proffered evidence on a pretrial motion *in limine* the court must assess whether the evidence is relevant and, if so, whether it is admissible, pursuant to Federal Rules of Evidence 401 and 402. "[T]he burden is on the introducing party to establish relevancy," *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990), as well as admissibility. Even relevant evidence may be deemed inadmissible and subject to exclusion on multiple grounds, including that "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. "Assessing the probative value of [the proffered evidence] and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403."

5

*Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (alteration in original)

(quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)).  "This is particularly true with respect to

Rule 403."  *Id.*

　　Under Rule 403, the court must "engage in on-the-spot balancing of probative value and

prejudice and . . . exclude even factually relevant evidence when it fails the balancing test."

*United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011) (internal quotation marks omitted).

This balancing test is "fact-based and depends on many factors, including how closely related the

evidence is to the plaintiff's circumstances and theory of the case."  *Nuskey v. Hochberg*, 723 F.

Supp. 2d 229, 233 (D.D.C. 2010) (quoting *Sprint/United Mgmt. Co.*, 552 U.S. at 387–88).

Importantly, "unfair prejudice within [the Rule 403] context means an undue tendency to suggest

decision on an improper basis, commonly, though not necessarily, an emotional one."  *United

States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (quoting FED. R. EVID. 403 advisory

committee's notes).  Exclusion based on unfair prejudice is particularly important in the case of

expert evidence, which "can be both powerful and quite misleading because of the difficulty in

evaluating it."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993) (quoting Jack B.

Weinstein, *Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended*, 138

F.R.D. 631, 632 (1991)); *Parsi v. Daioleslam*, 852 F. Supp. 2d 82, 86 (D.D.C. 2012) (observing

that "because '[e]xpert evidence can be both powerful and quite misleading,' a court has greater

leeway in excluding expert testimony under Rule 403 than it does lay witness testimony.")

(quoting *Daubert*, 509 U.S. at 595).

　　Depending upon the nature of the evidentiary issue presented in a pretrial motion *in

limine*, the court must also assess whether a ruling is appropriate in advance of trial or, instead,

should be deferred until trial "'[when] decisions can be better informed by the context,

foundation, and relevance of the contested evidence within the framework of the trial as a whole.'" *Herbert v. Architect of the Capitol*, 920 F. Supp. 2d 33, 38 (D.D.C. 2013) (quoting *Casares v. Bernal*, 790 F. Supp. 2d 769, 775 (N.D. Ill. 2011)) (alteration in original). The timing of a decision on the admissibility of contested evidence is a matter within a trial judge's discretion. *Banks*, 958 F. Supp. 2d at 81–82; *Barnes v. District of Columbia*, 924 F. Supp. 2d 74, 78–79 (D.D.C. 2013) ("The trial judge's discretion extends not only to the substantive evidentiary ruling, but also to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial."); *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 11 (D.D.C. 2011).

## III.    DISCUSSION

The pending motions *in limine* are addressed *seriatim* below.

### A.    The Government's Motion in *Limine* to Admit Certain Exhibits Related to Maryland Medicaid

The United States seeks to introduce four exhibits at trial, two against each defendant, that relate to other crimes of the defendants, namely, possible fraud committed against the Maryland Medical Assistance Program ("Maryland Medicaid"). The four documents at issue consist of three provider agreements with Maryland Medicaid and a letter from a Maryland agency: (1) a March 1, 2006 Provider Agreement between Flo-Diamond Healthcare Services ("Flo-Diamond") and Maryland Medicaid, Gov't Mot., Ex. A ("Gov't Ex. 277"), ECF No. 273-2, which is offered against Michael Bikundi; (2) a June 12, 2007 Provider Agreement between Global Healthcare Services and Maryland Medicaid, *id.*, Ex. B ("Gov't Ex. 278"), ECF No. 273-3, which is offered against Florence Bikundi; (3) an April 5, 2010 Provider Agreement between Global Healthcare Services and Maryland Medicaid, *id.*, Ex. C ("Gov't Ex. 280"), ECF No. 273-4, which is offered against Florence Bikundi; and (4) a March 8, 2006 letter from the Maryland

Department of Health and Mental Hygeine to Michael Bikundi discussing an onsite inspection of Flo-Diamond, *id.*, Ex. D ("Gov't Ex. 276"), ECF No. 273-5, which is offered against Michael Bikundi. *See id.* at 1–2.

The three Maryland Medicaid Provider Agreements are all substantially the same: each provide, in part, that the Provider agrees "[t]o comply with all of the requirements of the Maryland Medical Assistance Program as well as any other applicable regulations . . . . [,]" "maintain adequate records[,]" and "not knowingly employ, or contract with a person, partnership, or corporation which has been disqualified from providing or supplying services to Medical Assistance recipients" without prior written approval. Gov't Ex. 277 at ¶¶ A–B, E; Gov't Ex. 278 at ¶¶ A–B, E; Gov't Ex. 280 at ¶¶ A–B, E. The March 1, 2006 Provider Agreement is signed by Michael Bikundi on behalf of Flo-Diamond, Gov't Ex. 277 at 1, 4, the June 12, 2007 Provider Agreement is signed by Florence Bikundi on behalf of Flo-Diamond, Gov't Ex. 278 at 1, 4, and the April 5, 2010 Provider Agreement is signed by Florence Bikundi on behalf of Global Healthcare Services, Gov't Ex. 280 at 1, 4.

The March 8, 2006 letter informs Michael Bikundi that his "request to enroll as a residential service agency (RSA) rendering PDN [private duty nursing] services to Medicaid recipients is denied" as a result of an "onsite inspection of Flo-Diamond." Gov't Ex. 276 at 1. The letter explains that Flo-Diamond's "skills assessment policy was absent," and its "medication administration, emergency procedures, clinical management, maintenance of equipment, quality assurance, complaint resolution procedures, coordination of care, back-up nursing contingency plan, job descriptions and supervision polices were incomplete." *Id.* It further explains that Flo-Diamond's "employment files failed to contain valid signed licensure, cardio-pulmonary resuscitation (CPR) certifications and skills checklists . . . . criminal

background checks and employment/character references," all of which are "essential elements that should be included in all nursing staff's employment files and are a requirement as a condition for participation in order to be a Medicaid provider . . . ." *Id.*

The defendants object to the admission of these four documents as "other crimes" evidence on the grounds that they are not relevant and unduly prejudicial. Def. Florence Bikundi's Opp'n to Gov't's Mot. ("Def.'s Opp'n") at 1, ECF No. 287; PTC Tr. at 43–45. The defendants argue that the documents relate only to the Maryland Medicaid program, which they also contend has different requirements than the D.C. Medicaid program. *See* PTC Tr. at 43–45. Consequently, to the extent that the government seeks to introduce these four documents to show the defendants' knowledge of the D.C. Medicaid program requirements, the defendants contend these documents are irrelevant since they pertain only to the Maryland Medicaid program and, further, would, instead, show only propensity to engage in certain conduct, which is not admissible. *See id.*; *id.* at 49 ("My dispute with what they're trying to use it for is propensity that they did it in Maryland, did it in 2006 therefore they must have done it in 2009 going forward. [If] [t]heir argument is limited to notice they had notice about what they were supposed to be doing and not be doing; I have no objection but if the argument goes any further than that that's where my objection lies.") (Defense counsel of Michael Bikundi).

Federal Rule of Evidence 404(b) bars the admission of evidence of a "crime, wrong, or other act" offered "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). Such evidence "may be admissible for another purpose," however, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," as long as the government provides notice of its intent to offer the evidence and, when requested, guidance is

provided to the jury in the form of limiting instructions.  FED. R. EVID. 404(b)(2); *see United States v. Straker*, Nos. 11-3054, 11-5124, 11-3055, 11-3056, 11-3057, 11-3058, 11-3059, 11-3061, 2015 WL 5099548, at *9 (D.C. Cir. Sept. 1, 2015) (per curiam) ("The Rule prohibits the admission of evidence of a crime, wrong, or other bad act 'when offered for the purpose of proving that a defendant acted in conformity with his character, but allows admission so long as the evidence is offered for any other relevant purpose.'") (citing *United States v. Lawson*, 410 F.3d 735, 741 (D.C. Cir. 2005)).

The D.C. Circuit has pointed out that "[a]lthough the first sentence of Rule 404(b) is framed restrictively, the rule itself is quite permissive, prohibiting the admission of other crimes evidence in but one circumstance—for the purpose of proving that a person's actions conformed to his character." *United States v. Bowie*, 232 F.3d 923, 929–30 (D.C. Cir. 2000) (citations and quotation marks omitted).  In short, "Rule 404(b) is a rule of inclusion rather than exclusion." *Id.* at 929.  Even if evidence may be admissible under Rule 404(b), however, the Court must continue its analysis.  The D.C. Circuit has instructed that "[c]ompliance with Rule 404(b) does not itself assure admission of the other crimes evidence.  If the defendant moves under Rule 403, the court may exclude the evidence on the basis that it is unfairly prejudicial, cumulative or the like, its relevance notwithstanding." *Id.* at 930 (citation and quotation marks omitted).  "This two-step analysis—certification of a 'proper' and relevant purpose under Rule 404(b), followed by the weighing of probity and prejudice under Rule 403—is firmly rooted in the law of this circuit." *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990); *see also United States v. Sitzmann*, 856 F.Supp.2d 55, 61–62 (D.D.C. 2012) (applying the two-step analysis described in *Miller*).

Indeed, the D.C. Circuit recently emphasized that "[e]ven if it is concededly relevant, unduly prejudicial evidence may be excluded to prevent jurors from impermissibly relying on biases, dislikes, or the emotional impact of the evidence, for example by drawing on assumptions about a defendant's bad character, rather than proof of the criminal conduct charged." *Straker*, 2015 WL 5099548, at *9. "The Rule's requirement that the danger of unfair prejudice *substantially* outweigh probative value calls on us," however, "in close cases, to lean towards admitting evidence." *Id.* (emphasis in original); *see also United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("Rule 403 does not bar powerful, or even prejudicial evidence. Instead, the Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value.") (citations and quotation marks omitted) (emphasis and brackets in original).

Set against these standards for admission of other crimes evidence under Rules 404(b) and 403, the four documents at issue are properly admissible to show the defendants' knowledge and intent, and the absence of mistake or accident. Contrary to the defendants' arguments that the proffered exhibits are not relevant and, consequently, could only demonstrate propensity to engage in bad acts, *see supra*, these documents contain detailed information regarding the requirements for Medicaid providers. Certainly, the documents relate to the Maryland Medicaid program instead of the D.C. Medicaid program. The government notes, however, that requirements for both programs are substantially the same. Gov't's Supp. Br. at 4. For example, both programs require providers to maintain personnel records for each employee, including criminal background checks, a basic health screening, and verifications of professional licensure or certification, references, and employment history. *See* MD. CODE REGS. 10.07.05.10(B)(1)(a)– (e); D.C. Mun. Regs. tit. 22-B, § 3907.2(b), (e)–(g), (i). The receipt of the documents by the

defendants tends to show that they were advised about and familiar with the general regulatory requirements to be a Medicaid provider.  As such, these documents, even if they involve a different company controlled by the defendants, Flo-Diamond, a prior period of time, and/or the Maryland Medicaid program, are clearly relevant to show the defendants' general knowledge of Medicaid requirements and, to the extent the requirements were not followed, their intent not to comply with them.

The defendants also assert that Rule 403 operates as a bar on the introduction of the proffered exhibits because they will "simply confuse the jury" and "lead to a mini-trial on acts that occurred in Maryland," resulting in a needless waste of time.  *See* Def.'s Opp'n at 2–3.  The Court disagrees.

First, the jury in this case will be confronted with hundreds of paper exhibits, so four more documents will not tip the scales into undue confusion.  Second, the government has explained that the proffered exhibits are not being offered as proof that the defendants engaged in criminal activity to defraud the Maryland Medicaid program but, instead, to show the defendants' knowledge of the regulatory requirements applicable to Medicaid providers.  Thus, the defendants' specter of a "mini-trial" about fraudulent activity in Maryland is incorrect.

Finally, even if the proffered exhibits tend to show that the defendants engaged in the same allegedly fraudulent activity in Maryland as they did in D.C., this evidence would be prejudicial but not so unfair as to substantially outweigh the probative value of the evidence.  *See United States v. Douglas*, 482 F.3d 591, 601 (D.C. Cir. 2007) (finding that even though the "evidence almost unavoidably raises the danger that the jury will improperly conclude" propensity, such "danger . . . cannot give rise to a *per se* rule of exclusion") (citation and quotation marks omitted).  The danger of unfair prejudice is minimal when the "other crimes"

evidence is sufficiently similar to the charged crime as to add "no emotional or other pejorative emphasis not already introduced by the evidence" of the crime charged in the indictment. *Straker*, 2015 WL 5099548, at *10 (citation and quotation marks omitted); *see also United States v. Bell*, 795 F.3d 88, 99–100 (D.C. Cir. 2015) (finding no abuse of discretion in admission, under Rules 404(b) and 403, of a murder committed by the defendant "as that shooting 'did not involve conduct any more sensational or disturbing than the [other]' conduct attributed to [him]") (first alteration in original) (citing *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (D.C. Cir. 1990)).

The D.C. Circuit's recent decision in *United States v. Miller*, No. 08-3116, 2015 WL 4979012 (D.C. Cir. Aug. 21, 2015), is illustrative of this point.  There, the Court found no abuse of discretion by the trial court in admitting, under Rules 404(b) and 403, evidence from prospective home buyers who were victims of mortgage fraud perpetuated by the defendant when the defendant was not charged with mortgage fraud but, instead, other types of real-estate investment transaction fraud.  *Id.* at *6–7.  The Court rejected the defendant's argument that the other crimes testimony "should have been deemed irrelevant" since it did not pertain to the charged fraudulent transactions.  *Id.* at *7.  Instead, the Court explained:

> [T]he evidence in question was directly probative of [the defendant]'s fraudulent intent in carrying out the charged scheme, showing that the mortgage side of [his] business was a sham.  And when, as here, the "evidence indicates a close relationship to the event charged," a district court acts within its discretion by striking the Rule 403 "balance . . . in favor of admission."

*Id.* (ellipsis in original) (citing *United States v. Clarke*, 24 F.3d 257, 266 (D.C. Cir. 1994)). Likewise, here, the defendants' alleged activity with the Maryland Medicaid program is closely related to their business dealings with the D.C. Medicaid program and the proffered evidence of such activity would not be unduly prejudicial.

Moreover, to the extent that the government's exhibits raise a potential risk about the scope of the charged conspiracy, that risk may be mitigated with an appropriate limiting instruction. *See Bell*, 795 F.3d at 100. Accordingly, the parties are directed to craft such a limiting instruction for use by the Court prior to introduction of the exhibits, and the government's motion to admit, under Rule 404(b), Government Exhibits 276, 277, 278, and 280 is granted.

### B.    Florence Bikundi's Motion *in Limine* Regarding False Statements

Defendant Florence Bikundi requests the exclusion of "testimony or reference to . . . alleged false statements on financial and bank documents." Def.'s Mot. at 1.[2] Specifically, the defendant challenges the admission of Government Exhibit 153, a "False Statements Chart" and all of the evidence underlying that exhibit. Def.'s Mot. at 2–3; PTC Tr. at 78:6–13. Neither party submitted the False Statements Chart as an exhibit to papers on the defendant's motion, but this chart is described on the Government's Proposed Exhibit List, which was submitted as an exhibit to the parties' Joint Pretrial Statement ("JPTS"). *See* JPTS, Ex. 3 ("Gov't's Proposed Ex. List") at 22–23, ECF No. 271-1. A courtesy copy of the proposed exhibit was also furnished to the Court in accordance with the Court's Standing Order ¶ 8(h), ECF No. 74.

Government Exhibit 153 consists of (1) the False Statements Chart listing a number of bank account and loan applications submitted by the defendants and, for each listed application, a description of corresponding allegedly false statements made by the defendants on those applications relating to the defendants' United States citizenship, prior criminal convictions, prior bankruptcy filings, debt obligations, and property ownership interest; and (2) copies of the

---

[2] The defendant's motion *in limine* was withdrawn, in part, during the pretrial conference to the extent that it seeks exclusion of "testimony or reference to alleged revocations of nursing licenses." Def.'s Mot. at 1; Minute Order (Sept. 18, 2015).

underlying applications evidencing the defendants' representations referenced in the chart. At the pretrial conference, the government "withdrew" evidence in the chart of false statements pertaining to prior criminal convictions. PTC Tr. at 86:24–25. Thus, only evidence of false statements pertaining to the defendants' citizenship, prior bankruptcy filings, debt obligations, and property ownership interest remain at issue.[3]

Notably, the defendant does not challenge the admission of the summary chart exhibit as a summary to prove the content of the underlying documents. *See* FED. R. EVID. 1006 (permitting a "proponent [to] use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court" as long as the proponent has made "the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place"). Instead, the defendant challenges the admission of any false statements she allegedly made on the grounds that such false statements are irrelevant and unduly prejudicial, making what is essentially a Rule 404(b) argument. Def.'s Mot. at 3; *see also* Def.'s Reply to Gov't's Opp'n to Def.'s Mot. *in Limine* to Exclude Certain Evidence and/or Testimony ("Def.'s Reply") at 1, ECF No. 288. The Court disagrees.

The defendants are charged in Count Fifteen of the Superseding Indictment with conspiracy to commit money laundering, and the Indictment alleges that the "manner and means used to accomplish the goals of the conspiracy included" the defendants' making "numerous false statements on applications to banks, mortgage providers, insurance companies, and other

---

[3] Indeed, the government represents in its supplemental filing that it "seeks to introduce false statements the defendant made on financial institution documents related [only] to the defendant's prior bankruptcy filing, default on her mortgage, and her citizenship." Gov't's Supp. Opp'n at 1. Accordingly, the defendant's motion is granted as conceded to the extent that the government seeks to introduce false statements pertaining to prior criminal convictions on the False Statements Chart or otherwise, and the Court expects that the government will amend Government Exhibit 153 before trial to remove any reference to or evidence of false statements made with respect to criminal history.

financial institutions." Superseding Indictment ¶ 86(b). The government's money laundering theory is that the defendants opened multiple bank and other financial accounts and engaged in other financial transactions to conceal illegal proceeds. *See* Gov't's Mem. Opp'n Def.'s Mot. *in Limine* to Exclude Certain Evidence and/or Testimony ("Gov't's Opp'n") at 3–4, ECF No. 280; *see also United States v. Bikundi*, No. 14-cr-0030 (BAH), 2015 WL 5118514, at *13 (D.D.C. Aug. 28, 2015) (describing the government's money laundering theory of "layering," "the process of repeatedly shifting funds from an initial 'intake' account through numerous levels of recipient accounts"). Thus, the government alleges that the false statements that the defendants made on financial applications "helped to facilitate the charged money laundering transactions." Gov't Opp'n at 4. Specifically, the government argues that "the false statements evidence is relevant to explain how the defendant executed her money laundering scheme, her knowledge that she conducted the charged money laundering transactions with the proceeds of unlawful activity, and her intent to engage in 'concealment' money laundering." Gov't's Supp. Opp'n at 2. The Court agrees with the government that false statements made on financial applications are relevant to show "manner and means," *i.e.*, how the defendants laundered money, *see United States v. Naegele*, 341 B.R. 349, 364 (D.D.C. 2006) (explaining that "'manner and means' paragraphs," typical in fraud and conspiracy indictments, are not irrelevant "but instead set forth acts or conduct intended to illustrate how the scheme to defraud was carried out"), and probative of the defendants' intent to launder illegal proceeds, *see* Gov't Opp'n at 2.[4]

---

[4] As the defendant notes, *see* Def.'s Reply at 1, the relevance and prejudicial effect of the defendant's alleged false statements in financial documents was also raised in the defendant's pretrial Motion to Strike Surplusage or in the Alternative Preclude the Government From Introducing Evidence at Trial ("Def.'s Surplusage Mot."), ECF No. 209. In that motion, the defendant requested an order striking language pertaining to false statements made in financial applications from the Superseding Indictment—specifically, paragraphs 86(b) and 87(a), (c), (e)–(g), (j)–(k), and (m)—pursuant to Federal Rule of Criminal Procedure 7(d) or, in the alternative, precluding the government from introducing any related evidence at trial. *See* Def.'s Surplusage Mot. at 1 (citing FED. R. CRIM. P. 7(d), which allows, "[u]pon the defendant's motion, the court [to] strike surplusage from the indictment or information"). At oral

Moreover, the false statements are not unduly prejudicial. Evidence that the defendants falsely stated that they were United States citizens is hardly, if at all, prejudicial. *See United States v. Simpson*, 910 F.2d 154, 158 (4th Cir. 1990) (finding evidence of the defendant's Jamaican citizenship was not unfairly prejudicial); *United States v. Robinson*, No. 5:11CR00584, 2012 WL 5386037, at *1 (N.D. Ohio Nov. 2, 2012) ("Ultimately, evidence of [the defendant]'s . . . citizenship is not unduly prejudicial unless one makes the unwarranted inference that the American populace is generally biased against foreign nationals."). While evidence of false statements pertaining to bankruptcy proceedings may be somewhat prejudicial, revealing that the defendants previously filed for bankruptcy, the prejudice does not substantially outweigh the probative value of that evidence. Indeed, courts have found evidence of bankruptcy and misrepresentations made in bankruptcy proceedings more probative as evidence of a defendant's knowledge and/or intent to commit fraud-related crimes than prejudicial. *See, e.g., United States v. Ledee*, 772 F.3d 21, 35 (1st Cir. 2014) (finding district court "correct to conclude that the evidence of an earlier bankruptcy violation would not engage the jurors' emotions in an unsettling way" in a money laundering case); *United States v. McGrue*, 567 F. App'x 503, 505 (9th Cir. 2014) (finding probative value of "exhibits related to false financial instruments" "outweighed any prejudicial impact" in case about mortgage foreclosure scheme); *United States*

---

argument, defense counsel argued that the allegations of false statements in the Superseding Indictment are "both immaterial and . . . inflammatory." Transcript of Motions Hearing (July 31, 2015) ("Mots. Hrg. Tr.") at 122:14–16, ECF No. 296. Specifically, the defendant argued that there is no allegation that the defendants "tried to conceal the source of the funds," which is what the crime of money laundering typically entails. *Id.* at 123:9–11. In denying the motion without prejudice, the Court indicated that the motion may "be renewed at the appropriate time when I better understand the government's theory of its money laundering count, particularly since the standard for striking surplusage in an indictment is very exacting." *Id.* at 132:6–13. As a result, the defendant apparently brought the motion *in limine* now at issue simply to preserve her objection and indicates that she wishes to reserve argument, and for the Court to reserve ruling, on the admissibility of evidence of false statements until trial. *See* Def.'s Mot. at 3; Def.'s Reply at 1. As the defendant concedes, however, she "fully addressed the arguments concerning alleged false statements in [her] pretrial motions involving 404(b) and Surplusage." Def.'s Reply at 1. Moreover, the Court has heard extensive argument on both motions, *see* Mots. Hrg. Tr. at 121–32; PTC Tr. at 76–86, and the motions are fully briefed. Thus, the issue is ripe for consideration, and the Court finds that a ruling on this evidentiary issue is appropriate in advance of trial. *See Barnes*, 924 F. Supp. 2d at 78–79; *Graves*, 850 F. Supp. 2d at 11.

*v. Patela*, 578 F. App'x 139, 142–43 (3d Cir. 2014) (finding district court's admission of evidence of mortgage loan fraud and misrepresentations made in bankruptcy court proper as probative of the defendant's "capacity to knowingly perpetrate fraud"); *United States v. Komasa*, No. 2:10-cr-72, 2012 WL 5392099, at *2 (D. Vt. Nov. 5, 2012) (finding the "prejudicial impact of the fact that [the defendant] had filed for bankruptcy in the past was minimal"). *Cf. United States v. Bates*, 146 F. App'x 795, 798 (6th Cir. 2005) (finding district court abused its discretion in excluding evidence of defendant filing bankruptcy petitions because such an act is not an "intrinsically 'bad act[]' of the kind contemplated by Rule 404"), *aff'd*, 767 F.3d 151 (2d Cir. 2014), *and*, 577 F. App'x 43 (2d Cir. 2014). Thus, evidence of any false statements that the defendants made on financial applications with respect to their citizenship or bankruptcy status will be admissible at trial.

## IV.    CONCLUSION

For the foregoing reasons, the United States' Motion *in Limine* to Admit Certain Exhibits Pursuant to Federal Rule of Evidence 404(b), ECF No. 273, is granted, and the defendant Florence Bikundi's Motion *in Limine* to Exclude Certain Evidence and/or Testimony, ECF No. 276, is granted in part and denied in part. Specifically, the defendant's motion is granted as conceded to the extent that the government seeks to introduce false statements pertaining to criminal history on the False Statements Chart, Government Exhibit 153, or otherwise, and denied in all other respects.

An appropriate Order accompanies this memorandum opinion.

Date: October 7, 2015

_____
BERYL A. HOWELL
United States District Judge

18