UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL D. BIKUNDI, SR.,<br><br>Defendant. | Criminal Action No. 14-30-2 (BAH)<br><br>Chief Judge Beryl A. Howell |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is defendant Michael D. Bikundi, Sr.'s renewed motion for compassionate release. Def.'s Mot. for Release from Custody and Placement on Supervised Release Due to Particularized Susceptibility to the Devastating Effects of COVID-19 Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Def.'s 2d Mot."), ECF No. 644. Defendant is 67 years-old and currently serving an 84-month sentence in Butner, North Carolina. Gov't Opp'n to Def.'s Mot. ("Gov't Opp'n") at 2, ECF No. 645.[1] He fears that "his documented comorbidities of cancer, hypertension, Hepatitis-C and tuberculosis" put him at particular risk of contracting and facing severe complications from the effects of COVID-19, currently the cause of a worldwide pandemic and national emergency. Def.'s 2d Mot. at 5–6.[2] Despite conceding that defendant has "established 'extraordinary and compelling reasons' to support a sentence reduction," the government opposes his early release. Gov't Opp'n at 10. For the reasons set forth below,

---

[1] The government incorrectly states that defendant is serving a "74 month sentence." Gov't Opp'n at 2; *but see* Judgment at 3, ECF No. 542.

[2] *See Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, OFFICE OF THE PRESIDENT OF THE UNITED STATES, https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (last visited June 12, 2020).

1

defendant's motion is granted and his sentence of imprisonment is reduced to a sentence of time served.

I.   **BACKGROUND**

The reasons for defendant's incarceration have been thoroughly described elsewhere, so that ground need not be reploughed. *See United States v. Bikundi*, 926 F.3d 761, 773–76 (D.C. Cir. 2019); *United States v. Bikundi*, Crim. Case No. 14-30 (BAH), 2016 WL 912169, *1–19 (D.D.C. Mar. 7, 2016). Suffice it to say that, on December 18, 2014, defendant was indicted on 13 counts of a 27-count, multi-defendant superseding indictment alleging a long-running and massive Medicaid fraud. *See generally* Superseding Indictment, ECF No. 44. At trial, a jury found defendant guilty on 10 counts and not guilty on the other 3.[3] Defendant was sentenced to ten concurrent terms of 84 months' imprisonment to be followed by 36 months' supervised release. Judgment at 3–4. In addition, he was ordered to pay $80,620,929.20 in restitution, jointly and severally with his co-conspirators, *id.* at 7–9, and to forfeit $39,989,956.02 in assets, Forfeiture Order ¶ 7, ECF No. 542-1.

Defendant is now 47 months through his 84-month sentence and the Federal Bureau of Prisons ("BOP") approximates that, with credit for good time served, he will be released on August 25, 2022. He is currently incarcerated at a federal prison known as FCI Butner Low. Gov't Opp'n at 2. That facility has seen one of the worst outbreaks of COVID-19 within BOP. At the time of this writing, the prison has 641 inmates and 9 staff with active infections and has witnessed 9 inmate deaths and 1 staff death. *COVID-19 Coronavirus*, FEDERAL BUREAU OF

---

[3] In particular, defendant was found guilty of conspiracy to commit health care fraud, in violation of 18 U.S.C. §§ 1347 and 1349, health care fraud, in violation of 18 U.S.C. §§ 2 and 1347, money laundering conspiracy, in violation of 18 U.S.C. §§ 1347 and 1956(h), and seven counts of money laundering, in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(B)(i). Judgment at 1–2, ECF No. 542. He was found not guilty on three counts of engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. §§ 2 and 1957. Indictment at 37–38; Judgment at 1.

PRISONS, https://www.bop.gov/coronavirus/ (last visited June 12, 2020). Thus far, 45 inmates and 6 staff members have recovered from the disease. *Id.*

Owing to the wide spread of the virus within the facility where defendant is incarcerated, he began, in April of 2020, to attempt to secure early release. His first motion to this Court, made on April 13, 2020, "fail[ed] . . . to make clear" whether he sought a sentence reduction or simply release from prison to serve the remainder of his sentence on home confinement. Min. Order (Apr. 17, 2020); *see also* Def.'s Mot. for Release from Custody and for Placement on Home Confinement Due to Particularized Susceptibility to the Devastating Effects of COVID-19 ("Def.'s 1st Mot."), ECF No. 638. As both kinds of relief were unavailable to him at that time, the motion was denied on April 17, 2020. Min. Order (Apr. 17, 2020) (explaining that, insofar as defendant sought compassionate release, he had not even "attempt[ed] to exhaust administrative remedies" nor demonstrated any "futility or exigency" that would counsel in favor of waiving the exhaustion requirement, and, insofar as he sought release to home confinement, that decision was "in the hands of the Federal Bureau of Prisons" (citing 18 U.S.C. § 3624(c)(2))).

On April 15, 2020, defendant also filed, *pro se*, a request for compassionate release with the warden of his prison. Def.'s 2d Mot. at 2. That request, too, was denied. Defendant once again requested compassionate release from his warden on April 23, 2020, this time with the aid of counsel. *Id.* The warden has yet to respond to that request. *Id.* Finally, defendant submitted the instant motion to this Court on May 19, 2020. Defendant's most recent motion emphasizes several ailments that he says make him particularly vulnerable to the worst effects of COVID-19. Specifically, defendant notes that, at 67-years-old, his age combined with his diagnosed Type-2 diabetes, prostate cancer, hepatitis-C, tuberculosis, and hypertension, make him far more likely

to face severe complications should he become infected with the novel strain of coronavirus currently running rampant in his jail facility. Despite these documented comorbidities and the severity of the outbreak at FCI Butner Low, as noted, the government opposes defendant's motion. That motion is now ripe for consideration.

## II.     LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United* States, 564 U.S. 522, 526 (2011). As originally enacted, one such exception, codified in section 3582(c)(1)(A), empowered the BOP Director to "petition the court for a reduction in . . . sentence" and gave courts the authority to grant those petitions if they found "that the reduction was justified by 'extraordinary and compelling reasons.'" S. Rep. 98-223 at 118; *see also* Pub. L. No. 98-473, Title II, § 212(a)(2).[4] As amended in the First Step Act of 2018, Pub. L. No. 115-391, the exception in section 3582(c)(1)(A) is expanded to authorize a defendant directly to file a motion for such compassionate release with the court after he exhausts his "administrative rights to appeal a failure of the Bureau of Prisons to bring a [compassionate release] motion" on his behalf or he waits at least "30 days" after he delivers his request for compassionate release to "the warden of [his] facility." 18 U.S.C. § 3582(c)(1)(A).

---

[4]     As originally enacted, 18 U.S.C. § 3582 read as follows:

> The Court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, upon motion of the director of the Bureau of Prisons, may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission.

Pub. L. No. 98-473, Title II, § 212(a)(2).

4

In resolving motions for compassionate release, the court may reduce a term of imprisonment only "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable," *id.*, and upon making two findings: first, that "extraordinary and compelling reasons warrant such a reduction," *id*. § 3582(c)(1)(A)(i)[5]; and, second, "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," *id*. § 3582(c)(1)(A).[6]

The Sentencing Commission's policy statement at U.S.S.G. § 1B1.13, which was last substantively amended by the Commission on November 1, 2016, applies to motions for reduction of terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A), and provides guidance as to both of the statutorily required findings. It states that a reduction of a term of imprisonment may be warranted, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," when the court makes three determinations: (1) "extraordinary and compelling reasons warrant the reduction," or the defendant meets certain age and a minimum incarceration period, U.S.S.G. § 1B1.13(1)(A)–(B); (2) the defendant poses no danger to the safety of any other person or the community, *id*. § 1B1.13(2); and (3) "the reduction is consistent with [the] policy statement," *id.* § 1B1.13(3). The commentary to this policy statement then describes four "circumstances" that satisfy "extraordinary and compelling reasons warrant[ing] the reduction": (1) the medical condition of the defendant, who "is suffering from a terminal illness" or has chronic and "substantially diminish[ed] . . . ability . . . to provide self-care" within

---

[5] Though not relevant to the instant motion, the court may also reduce a prisoner's sentence if he is "at least 70 years of age" and has served at least 30 years in prison, when BOP has determined "that the defendant is not a danger to the safety of any other person or the community, as provided under [18 U.S.C. §] 3142(g)." 18 U.S.C. § 3582(c)(1)(A)(ii).

[6] The Sentencing Commission is tasked, in its organic statute, with promulgating general policy statements regarding "the sentence modification provisions set forth in section[] . . . 3582(c) of title 18," 28 U.S.C. § 994(a)(2), and "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," *id*. § 994(t).

the prison environment, *id*. § 1B1.13, cmt. n.1(A); (2) the defendant is at least 65 years old, with a serious deterioration in physical or mental health, after serving at least 10 years or 75 percent of the prison term, "whichever is less," *id.* § 1B1.13, cmt. n.1(B); (3) "[f]amily [c]ircumstances" of "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or the incapacitation of the defendant's spouse or registered partner "when the defendant would be the only available caregiver for the spouse or registered partner," *id*. § 1B1.13, cmt. n.1(C); and (4) "[o]ther [r]easons" found by the BOP Director to present an extraordinary and compelling reason "other than, or in combination with," the reasons specified in the policy statement, *id*. § 1B1.13, cmt. n.1(D).

### III.   DISCUSSION

There is much common ground between the government and the defendant. Both parties agree that defendant has met the exhaustion requirements of the compassionate release statute, Gov't Opp'n at 10, and, further, that he has presented "extraordinary and compelling reasons" supporting a sentence reduction as defined by 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13, *id.* at 11 ("[A]t this time [the defendant's] ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished, within the environment of a correctional facility, by the chronic condition and defendant's age."). The dispute has thus narrowed to two issues: (1) whether the factors outlined in 18 U.S.C. § 3553(a), consideration of which is mandated by the compassionate release statute, support a reduction of defendant's sentence; and (2) whether, if released, defendant would be "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(1)(B)(2).

In support of its contention that both considerations preclude a sentence reduction in this case, the government offers little more than a paragraph of argument. Gov't Opp'n at 11–12.

Indeed, with respect to the danger defendant may present to the community upon release, the government merely states, "given the challenges faced by the Probation Office in supervising defendants, defendant's release would present a danger to the community." *Id*. at 12.  As for the application of the 18 U.S.C. § 3553(a) factors, the government points only to part of one, namely the "nature and circumstances of the offense." *Id*. at 11 (quoting 18 U.S.C. § 3553(a)(1)).[7] Neither half-hearted argument is persuasive.

The government is right that the nature of the offense defendant committed is very serious.  He, his wife, and their co-conspirators swindled millions of dollars from Medicaid, a program designed to serve the nation's most vulnerable.  Nevertheless, prior to this offense, defendant had no criminal history.  Final Presentence Investigation Report at 34, ECF No. 428.  Defendant, by all accounts, had led a "very reputable and successful professional career." Sentencing Hr'g Tr. at 151:5, ECF No. 563.  Prior to sentencing, a number of letters were submitted in his support, showing that he was a respected member of the community.  From the time of his wife's arrest until his sentencing, defendant also acted as the primary caregiver for his twin children who, at the time were just under five years-old.  *Id*. at 151:7–8.  Balancing the seriousness of the offense with the characteristics of the defendant shows that Section 3553(a)(1), the only factor to which the government calls attention, does not preclude a sentence reduction in this instance.

Nor do the other 3553(a) factors counsel against reducing defendant's sentence to time served.  In ensuring that his sentence "reflect[s] the seriousness of the offense," 18 U.S.C. § 3553(a)(2)(A), the Court is mindful that defendant's 84-month sentence is substantially less than what a pure application of the sentencing guidelines would have recommended, Sentencing

---

[7] Section 3553(a)(1), in full, requires courts to consider "the nature and circumstances of the offense *and* the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1) (emphasis added).

7

Hr'g Tr. at 153:6–7 (noting that the guidelines recommended a sentence between 324 and 405 months). Nevertheless, although his sentence of imprisonment may have been below the recommended guideline sentencing range, his financial crime carried with it a severe financial penalty. Defendant and his wife have forfeited close to $40 million and, together with their co-conspirators have an $80 million restitution obligation. Even out of prison, defendant will continue to pay for his crime for years to come, and likely for the remainder of his life. Moreover, as a non-citizen, defendant's conviction carries more serious ramifications still, as he is now eligible for removal from the United States, where his young children reside. The financial and collateral consequences of defendant's conviction doubtless reflect the severity of his offense. 18 U.S.C. § 3553(a)(2)(A). Likewise, such serious penalties send a clear message that those who commit such frauds will be unable to enjoy the fruits of their crimes and provides deterrence to both defendant and others from future criminal conduct. *Id*. § 3553(a)(2)(B). As for the need to "protect the public from further crimes of the defendant," *id*. § 3553(a)(2)(C), defendant is prohibited for three years following his release from "securing and engaging in employment that involves unmonitored access to financial accounts, funds, billing, or negotiable instruments," Judgment at 6. In other words, defendant will not easily find himself in a position to commit a similarly enormous fraud again.

      While no factor counsels seriously against a reduction in defendant's sentence, at least one factor counsels in favor. A court must consider the need to "provide the defendant with needed . . . medical care," *id*. § 3553(a)(2)(D), which, by the government's own admission, would be hard to come by should defendant be infected with the deadly disease currently spreading widely through his prison, Gov't Opp'n at 11 (noting that defendant's "ability to provide self-care against" the worst effects of COVID-19 is "substantially diminished[] within

the environment of a correctional facility"). In short, the factors listed in section 3553(a), far from barring a reduction in sentence, may recommend one.

Finally, the government's conclusory allegation that defendant may present a danger to the community owing to "the challenges faced by the Probation Office in supervising defendants" is wholly unsupported. Gov't Opp'n at 12. Throughout the pandemic, the Probation Office has done its job admirably, and the government presents no evidence to the contrary. In any event, as noted already, prior to this offense, defendant's criminal record was clean. Moreover, his crime, though unquestionably serious, was nonviolent and its commission required intricate coordination and access to the inner-most workings of a health-care organization. Restrictions on the defendant's future employment in the conditions of his supervised release and the low likelihood that defendant, with an $80 million fraud on his record, will be able to obtain such high-level financial responsibility again, mean any risk of recidivism is vanishingly small.

## IV.   ORDER

Defendant has demonstrated that a reduction in his sentence comports with the factors laid out in 18 U.S.C. § 3553(a), extraordinary and compelling reasons exist for that reduction, and he does not pose a risk to the community. Reducing his sentence to time-served is thus amply justified. 18 U.S.C. § 3582(c)(1)(A). Accordingly, it is hereby

**ORDERED** that defendant's previous sentence of 84 months' imprisonment is reduced to time-served; it is further

**ORDERED** that defendant be released as soon as is practicable; and it is further

**ORDERED** that the defendant abide by all supervised release conditions imposed in the original judgment.[8]

**SO ORDERED.**

Date: June 12, 2020

_____
BERYL A. HOWELL
Chief Judge

---

[8] 18 U.S.C. § 3582(c)(1)(A) provides only for reductions of "imposed term[s] of imprisonment," and provides no authority to adjust terms of supervised release. While other provisions of law may provide such authority, the Court's power under the instant motion is limited to adjusting defendant's term of imprisonment.