UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MICHAEL D. BIKUNDI, SR.,<br><br>Defendant. | Criminal Case No. 14-30-2 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION AND ORDER

For his role in a massive and long-running Medicaid fraud, defendant Michael D. Bikundi, Sr. was found guilty by a jury of ten counts of fraud, money laundering, and conspiracy. Michael Bikundi Judgment ("Judgment") at 1–2, ECF No. 542. His sentence included forfeiture of tainted proceeds, periods of incarceration and supervised release, and restitution in the amount of $80,620,929.20 to be paid jointly and severally with his co-conspirators. Judgment at 7–9. Defendant, who is not a U.S. citizen, was instructed, as a condition of supervised release, to "comply with the Bureau of Immigration and Customs Enforcement's immigration process," and the Probation Office was directed to submit the presentence investigation report and judgment to the Bureau of Immigration and Customs Enforcement "to facilitate any deportation proceedings." Judgment at 6. Defendant remains in this country, however, despite perpetrating a massive fraud scheme. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); *id.* § 1101(a)(43)(M) (defining "aggravated felony" include an offense "involv[ing] fraud or deceit in which the loss to the victim or victims exceeds $10,000").

Pending before the Court is defendant's petition for writ of *coram nobis*, in which he asks to be relieved of his "extraordinary restitution" obligation. Def.'s Pet. for Writ of *Coram Nobis*

1

("Def.'s Pet.") at 9, ECF No. 661.[1]  Defendant argues that his trial, post-conviction, and appellate counsel, attorney Steven Kiersh, was ineffective because Kiersh failed to argue that defendant had a lesser role in the fraud than defendant's wife and co-defendant, Florence Bikundi, Def.'s Pet. at 11–13.  In opposing defendant's petition, the government argues that defendant should have raised his claims under 18 U.S.C. § 2255 and, on the merits of the petition, that the "record belies the defendant's specific claims of deficiency" of counsel. Gov't's Opp'n to Def.'s Pet. for Writ of *Coram Nobis* ("Gov't's Opp'n") at 2, ECF No. 675. Regardless of whether *coram nobis* is the correct vehicle for defendant's claim, it fails on the merits.  For the reasons set forth below, defendant's petition is denied.

**I.    BACKGROUND**

The full factual and extensive procedural background for this case has been set out in prior decisions of this Court and the D.C. Circuit.  *See generally United States v. Bikundi* (*Bikundi III*), Case No. 14-cr-30-2 (BAH), 2020 WL 3129018 (D.D.C. June 12, 2020) (granting motion for compassionate release and a reduction of sentence due to COVID-19); *United States v. Bikundi* (*Bikundi II*), 926 F.3d 761 (D.C. Cir. 2019) (affirming defendant's conviction and sentence); *United States v. Bikundi* (*Bikundi I*), Case No. 14-cr-30 (BAH), 2016 WL 912169 (D.D.C. Mar. 7, 2016) (denying defendant's motions for acquittal notwithstanding the verdict and for a new trial).  Only the facts and procedural background most relevant to the pending petition are described below.

Defendant was indicted in December 2014 on thirteen counts of a 27-count, 9-defendant indictment alleging expansive health care fraud and money laundering activities, *see generally*

---

[1]   In closing, defendant asks "that [his] conviction be vacated" or, in the alternative, that he be "resentenced regarding his restitution." Def.'s Pet. at 18.  This broad language attacking his conviction notwithstanding, the entirety of his petition focuses on challenging the restitution order. To the extent he requests broader relief, which is neither discussed nor justified on the record of this case, this request is denied.

2

Superseding Indictment, ECF No. 44, and was tried jointly with his wife, Florence Bikundi, *Bikundi I*, 2016 WL 912169, at *45. At trial, defendant's counsel repeatedly argued that the evidence against defendant and Florence Bikundi was dissimilar and reminded the jury that "even though two people are being . . . tried together, it's really two separate trials," Trial Tr. (Nov. 10, 2015 AM) at 9:5–7, ECF No. 377, and that some of the allegations and "much of the evidence did not apply to Michael Bikundi," *id.* at 9:17–18. At the conclusion of a month-long trial, the jury found defendant guilty on ten counts and not guilty on the other three. Judgment at 1–2.[2] Defendant was sentenced to ten concurrent terms of 84 months' imprisonment to be followed by 36 months' supervised release, *id* at 3–4, and ordered to pay $80,620,929.20 in restitution, jointly and severally with his co-conspirators, *id.* at 9.

Defendant's counsel filed a motion for acquittal notwithstanding the verdict and a motion for new trial, arguing in part that "the disparity of evidence between [defendant and Florence Bikundi] was overwhelming and created a spillover effect" on to defendant. Def.'s Mem. Supp. Mot. New Trial ("Def.'s New Trial Mem.") at 47, ECF No. 391. Both motions were denied in full. *Bikundi I*, 2016 WL 912169, at *49–50. On appeal, defense counsel argued that defendant was "enormously prejudiced by joinder with Florence Bikundi," Defs.-Appellants Joint Reply Br. at 27, *Bikundi II*, 926 F.3d 761 (No. 16-3066), and that the restitution amount was improper because the "government has never asserted, much less proved, that [defendant] participated in" all the same fraudulent activities as Florence Bikundi, *id.* at 38. The D.C. Circuit affirmed defendant's conviction and sentence in all respects. *Id.* at 801.

---

[2] Specifically, defendant was convicted of conspiracy to commit health care fraud (18 U.S.C. §§ 1347, 1349), health care fraud (18 U.S.C. §§ 1347, 2), money laundering conspiracy (18 U.S.C. §§ 1347, 1956(h)), and seven counts of money laundering (18 U.S.C. §§ 1956(a)(1)(B)(i), 2). Judgment at 1–2. Florence Bikundi was convicted on the same ten counts and two additional counts related to her role in establishing the business and fraudulently securing a license from D.C.'s Health Regulation and Licensing Administration. Florence Bikundi Judgment at 1–2, ECF No. 544.

In the early weeks of the COVID-19 pandemic, defendant petitioned for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) due to his particular susceptibility to COVID-19. *Bikundi III*, 2020 WL 3129018 at *1.[3] This motion was granted, and defendant was released 47 months into his 84-month term of incarceration. *Id*. at *2, 5. Shortly after transitioning to supervised release, the Probation Office recommended that defendant's restitution payments be suspended, Probation Pet., ECF No. 674 (sealed), and the Court suspended defendant's monthly restitution payment obligation "until the probation office determines he has the ability to pay," Min. Order (Apr. 30, 2021). Defendant also filed the pending petition for a writ of *coram nobis*, which is now ripe for resolution. See Gov't's Opp'n; Def.'s Reply Supp. Pet. for Writ of *Coram Nobis* ("Def.'s Reply"), ECF No. 676.

## II.   LEGAL STANDARD

An "extension of the original proceeding," a petition for a writ of *coram nobis* is "an extraordinary tool" allowing a trial court to correct a "legal or factual error." *United States v. Denedo*, 556 U.S. 904, 912–13 (2009); *see also Baxter v. Claytor*, 652 F.2d 181, 184 (D.C. Cir. 1981) (holding that a court with no role in the underlying proceedings could not hear a *coram nobis* petition). The writ provides a way "'to collaterally attack a criminal conviction for a person . . . who is no longer "in custody" and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241,'" *United States v. Newman*, 805 F.3d 1143, 1146 (D.C. Cir. 2015) (quoting *Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013)).[4] The authority to grant a writ of *coram nobis* is "conferred by the All Writs Act, which permits 'courts established by Act of Congress'

---

[3]   Steven Kiersch also represented defendant in his motion for compassionate release. *See* Def.'s Mot. Compassionate Release, ECF No. 644.

[4]   The writ is only available in criminal proceedings, as the Federal Rules of Civil Procedure have abolished the use of the writ of *coram nobis* in civil cases. *See* FED. R. CIV. P. 60(e); *United States v. Morgan*, 346 U.S. 502, 505 n.4 (1954).

to issue 'all writs necessary or appropriate in aid of their respective jurisdictions.'" *Denedo*, 556 U.S. at 911 (quoting 28 U.S.C. § 1651(a)).

Although "the precise contours of *coram nobis* have not been well defined," *id.* at 910 (internal quotation marks omitted), and "the D.C. Circuit's precedent in this area is thin," *United States v. Williams*, 630 F. Supp. 2d 28, 32 (D.D.C. 2009), the Supreme Court has identified three key factors to guide a district court's consideration of *coram nobis* relief: (1) "no other remedy [is] available;" (2) the error is "of the most fundamental character;" and (3) "sound reasons exist[] for failure to seek appropriate relief earlier," *United States v. Morgan*, 346 U.S. 503, 512 (1953). Petitioners must also establish (4) that "adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III." *United States v. Verrusio*, Case No. 09-cr-64 (BAH), 2017 WL 1437055, at *9 (D.D.C. Apr. 21, 2017) (quoting *United States v. Faison*, 956 F. Supp. 2d 267, 269 (D.D.C. 2013)); *see also United States v. Lee*, 84 F. Supp. 3d 7, 9 (D.D.C. 2015) (applying a four-factor test requiring a *coram nobis* petitioner to establish that "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character" (quoting *United States v. Hansen*, 906 F. Supp. 688, 692–93 (D.D.C. 1995))); *accord United States v. Riedl*, 496 F.3d 1003, 1006 (9th Cir. 2007); *Bereano v. United States*, 706 F.3d 568, 576 (4th Cir. 2013); *Klein v. United States*, 880 F.2d 250, 254 (10th Cir. 1989); *see also United States v. Rutigliano*, 887 F.3d 98, 108 (2d Cir. 2018) (applying a similar three-factor test requiring a *coram nobis* petitioner to "show that (1) 'there are circumstances compelling such action to achieve justice,' (2) 'sound reasons exist for failure to seek appropriate earlier relief,' and (3) 'the petitioner continues to suffer legal consequences from his conviction

that may be remedied by granting of the writ'" (quoting *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996))); *cf. Newman*, 805 F.3d at 1146 (taking note of the factors enunciated in *Riedl* and *Faison* but addressing only whether there was "fundamental error" in an ineffective assistance of counsel case where the defendant's counsel failed to advise him of the immigration consequences of pleading guilty).

## III.   DISCUSSION

Defendant argues that his petition "satisfies the four-part [*Hansen*] analysis that is required by this district for Writ of Coram Nobis to be an appropriate means of relief." Def.'s Pet. at 9. The government argues that defendant fails on the first and second factors: the availability of alternative forms of relief and the nature of the alleged error. Gov't's Opp'n at 9, 13–14. These factors will be discussed in turn.[5]

### A.   The Availability of Alternative Forms of Relief

The parties first disagree as to whether alternative forms of relief are available. Defendant argues that "his ability to file an effective [§ 2255 petition] is extremely limited" and, thus, a writ of *coram* nobis is the only avenue available for him to challenge the restitution order. Def.'s Pet. at 10. Relying on dicta from *Chaidez v. United States*, 568 U.S. 342 (2013), the government contends that *coram nobis* is unavailable *per se* when a petitioner is "in custody" for purposes of § 2255, Gov't's Opp'n at 9 (citing *Chaidez*, 568 U.S. at 345 n.1), and asks the Court to "re-characterize [the petition] as being brought under § 2255," *id.* at 2. Defendant remains "in custody" since his supervised release term continues, *see Matus-Leva v. United States*, 287 F.3d

---

[5]   Defendant fails to establish any error in his conviction or sentencing, much less a fundamental one; accordingly, there is no need to consider whether suspended restitution payments constitute sufficiently adverse consequences to justify a writ of *coram nobis*, nor whether this circumstance presents sound reasons for defendant's failure to seek relief earlier.

6

758, 761 (9th Cir. 2002) (citing *Jones v. Cunningham*, 371 U.S. 236, 242–43 (1963)), and thus the government makes a legitimate point but nonetheless misses the mark.

The parties here agree that a reduction in defendant's restitution obligation is "not cognizable under § 2255." Gov't's Opp'n at 12; *see also* Def.'s Pet. at 10. Indeed, the text of § 2255 itself limits the relief available to those petitioners "claiming the right to be released." 28 U.S.C. § 2255(a); *see also United States v. Wilkins*, 734 F. App'x 1, 5 (D.C. Cir. 2018) (holding that a "claim disputing a restitution order . . . does not challenge any aspect of the government's custody over the defendant, and therefore may not be brought under § 2255" (citing *Mamone v. United States*, 559 F.3d 1209, 1211 (11th Cir. 2009); *Kaminski v. United States*, 339 F.3d 84, 87 (2d Cir. 2003); *United States v. Thiele*, 314 F.3d 399, 401 (9th Cir. 2002))). The parties disagree, however, as to whether defendant may invoke *coram nobis* to collaterally attack the restitution component of his sentence while he is still in custody.

The D.C. Circuit has not weighed in on the question of whether a writ of *coram nobis* is available to a petitioner who is in custody for purposes of § 2255 but challenges a restitution order that is not cognizable under § 2255. The Seventh Circuit, however, has held that *coram nobis* relief may be available in such circumstances. *Barnickle v. United States*, 113 F.3d 704, 706 (7th Cir. 1997) (recognizing the availability of "a writ of error coram nobis to challenge a restitution order" where "§ 2255 is not available to challenge an order of restitution" (citing *United States v. Mischler*, 787 F.2d 240 (7th Cir. 1986)). The Second Circuit has noted, without resolving, this issue where a petitioner's claims would fail on the merits even if *coram nobis* were available. *Rutigliano*, 887 F.3d at 108.

Here, given that relief from restitution orders are not cognizable under § 2255, the government's invitation to recharacterize defendant's petition as a habeas petition under § 2255

makes little sense, and is rejected. In any event, the Court need not wade into a technical debate over the precise bounds of the writ of *coram nobis* and its interactions under these circumstances with § 2255. Assuming that petitioner may invoke *coram nobis* to raise a collateral attack on a restitution order while still in custody, defendant's claim here would fail on the merits because he has failed to show any error.

### B. Defendant Has Not Shown an Error in the Proceedings

*Coram nobis* relief is only available in "extraordinary cases when it is shown that there were fundamental flaws in the proceedings," *Denedo*, 556 U.S. at 916, "such as violations of the Sixth Amendment right to counsel," *Newman*, 805 F.3d at 1146. To prevail on an ineffective assistance of counsel claim, defendant must show (i) that counsel's performance was deficient under prevailing professional norms; and (ii) that the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *see also Newman*, 805 F.3d at 1147 (applying the *Strickland* framework to consider an ineffective assistance of counsel claim in a *coram nobis* petition). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim, *Strickland*, 466 U.S. at 700, so this Court need not "address both components of the inquiry if the defendant makes an insufficient showing on one," *id.* at 697. To establish deficient performance, defendant must show that his attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Defendant claims his attorney failed to challenge the amount of restitution and to distinguish defendant's conduct from that of his wife and co-defendant, Florence Bikundi, and that these failures resulted in a debilitating restitution judgement. Def.'s Pet. at 9-10.[6] In

---

[6] Remarkably, defendant does not, in his petition or reply, provide a single citation to the voluminous trial, post-conviction, or appellate records to support this claim of ineffective assistance, making only general references

support of the claim that Kiersh failed adequately to distinguish defendant from Florence Bikundi, defendant asserts that "never during [the] trial[] did counsel attempt to show any difference between [defendant] and his wife," Def.'s Pet. at 17, and, specifically that Kiersh "did [not] attempt to inform the jury that [defendant] was not a founder of [the business used to perpetrate the fraud], nor was he even an employee until 2011," Def.'s Pet. at 10.  These claims are flatly contradicted by the record.

The trial record shows that Kiersh frequently emphasized the differences between Florence Bikundi and defendant.  For example, Kiersh stated that Florence Bikundi's exclusion from Medicare programs "does not in any way relate to Michael Bikundi," Trial Tr. (Nov. 10, 2015 AM) at 8:16–17; that "Michael Bikundi's name is not on that [provider] agreement," Trial Tr. (Oct. 15, 2015 PM) at 91:1–2, ECF No. 309; and that "even though two people are being . . . tried together, it's really two separate trials," Trial Tr. (Nov. 10, 2015 AM) at 9:5–7, urging the jury "[to not] combine them," *id.* at 9:9–10.  Indeed, these repeated arguments by Kiersh prompted a response from the government, which noted in its closing argument that "Kiersh talked a lot about all the ways that Michael Bikundi supposedly tried to stop the fraud" perpetuated by Florence Bikundi and others.  *Id.* at 52:25–53:1. At the close of trial, Kiersh renewed his earlier motion for severance "based on disparity of the evidence." *Id.* at 75:13–17.

Kiersh's advocacy along these lines continued in post-conviction proceedings.  In motions for acquittal notwithstanding the verdict or for a new trial, he renewed prior motions for separate trial, and argued that defendant was prejudiced by the "enormity" of the "disparity of evidence between [defendant] and Mrs. Bikundi." Def.'s New Trial Mem. at 49.  Counsel further argued that because defendant "was never alleged to have been involved" with a key

---

to individual filings without providing any detail about their contents.  The record directly contradicts his allegations.

9

Medicaid Provider Agreement, the presentation of evidence at trial against Florence Bikundi relating to the agreement was "powerfully prejudicial" to defendant. *Id.* at 48. In defendant's sentencing memorandum, counsel urged the Court to consider a below-Guidelines sentence and argued against a role-enhancement, in part, because of "the relative roles of the co-conspirators." Def.'s Sentencing Mem. at 23, ECF No. 453 (sealed). Counsel emphasized that defendant "had absolutely nothing to do with the 2009 Medicaid Provider Agreement" and "had no knowledge of the revocation of Florence Bikundi's nursing license," *id.*, so defendant "should not be held accountable for the far more serious conduct of Florence Bikundi," *id.* at 24. Defendant contends that that his attorney did not "not directly address[]the approximately 80 million-dollar restitution that was a part of [defendant's] sentence," Def.'s Reply at 2, and that he failed at trial to "mention the amount of loss nor the fact that petitioner should not have been held accountable for the entire amount of loss," Def.'s Pet. at 12. This is incorrect. Defense counsel attacked the restitution amount for which defendant would be responsible, disputing that "the loss involved more than 20 million dollars," Def.'s Sentencing Mem. at 24, and made the more general point with regard to sentencing—but also relevant to restitution—that "[d]efendant should not be held accountable for the individual actions" of others, *id.* at 25.

Counsel continued these arguments on appeal, asserting that "the district court erred in denying [defendant's motion to sever] because of the unfair prejudice due to spillover effect as a result of the disparity of evidence against him as compared to that against Florence." *Bikundi II*, 926 F.3d at 780. Seeking to eliminate a managerial role sentence enhancement, Kiersh argued that defendant played a "lesser role" compared to his wife and co-defendants. Defs.-Appellants Joint Opening Br. at 107, *Bikundi II*, 926 F.3d 761 (No. 16-3066).

Not only does defendant fail to establish anything remotely close to deficient performance by Kiersh, but he also grossly mischaracterizes his attorney's performance. It is neither possible nor necessary to excerpt every example of Kiersh's thorough advocacy on defendant's behalf, but the record grossly undercuts defendant's characterization of the proceedings and undermines his claims of ineffective assistance of counsel.

Although defendant is correct that his petition "should not be summarily denied based off of the failure to present affidavits," Def.'s Reply at 1, he bears the burden of overcoming a presumption that the challenged judicial proceedings were correct, *Morgan*, 346 U.S. at 512. Defendant has failed "to make the required showing of . . . deficient performance," *Strickland*, 466 U.S. at 700, so he has failed to establish any error warranting *coram nobis* relief.

## IV.   CONCLUSION AND ORDER

Defendant has failed to establish ineffective assistance of counsel, which serves as the basis of his petition for a writ of *coram nobis*. Accordingly, is hereby

**ORDERED** that defendant's Petition for a Writ of Coram Nobis, ECF No. 661, is **DENIED**.

Date:  August 4, 2021

_____
BERYL A. HOWELL
Chief Judge